**Johnny TRIGGS and Diane Triggs, Plaintiffs–Appellants,**

**v.**

**Mark RISINGER and Janice Risinger, Defendants–Respondents.**

No. 55626.

Missouri Court of Appeals, Eastern District, Division One.

June 13, 1989.

Raymond Howard, St. Louis, for plaintiffs-appellants.

Nicholas J. Lamb, Mike W. Bartolacci, St. Louis, for defendants-respondents.

REINHARD, Judge.

Plaintiffs filed a petition alleging that defendants fraudulently concealed the existence of a 15 year lease which encumbered a portion of the property they purchased from defendants. They sought rescission of the contract and deed, as well as actual and punitive damages. Defendants filed a motion for summary judgment relying on various documents and depositions

of the parties. The trial court sustained the motion. Plaintiffs appeal; we affirm.

Plaintiffs purchased defendants' residence at 138 Powell in St. Louis County. The record reveals that this property is located at Lot 4 of Royal Oaks subdivision in St. Louis County, Missouri. Lot 4 fronts Powell Avenue on the north and can be roughly described as follows: beginning at the northeast corner, running west 95.00 feet along Powell Avenue; thence, south 188.81 feet; thence, east 70.50 feet; thence, south 41.19 feet; thence, east 24.50 feet; thence, north 230.00 feet to the point of beginning.

A ten to twelve foot wooden fence runs the entire 95 feet across the lot on a line 189 feet south of the lot line on Powell Avenue. The fence divides the lot into two separate areas, blocking the view between them. The area where the house is located is 95 feet × 189 feet. The other area is 24.5 feet × 41 feet and is encumbered by the lease.

In their sole point on appeal, plaintiffs contend that the trial court erred in granting summary judgment "for the reason that in the sale of real property, the sellers have a duty to disclose an encumbrance on title and such failure is false representation by concealment. Thus mere silence of respondents, in their relationship with the purchasers concerning the encumbrance, is not unassailable proof of no fraud entitling them to a summary judgment."

■ The tort of fraud and deceit consists of the following elements:

(1) a false, material representation;

(2) the speaker's knowledge of its falsity or his ignorance of its truth;

(3) the speaker's intent that it should be acted upon by the hearer in the manner contemplated;

(4) the hearer's ignorance of falsity of the statement;

(5) the hearer's reliance on its truth and the right to rely thereon; and

(6) proximate injury.

*Strebler v. Rixman,* 616 S.W.2d 876, 877 (Mo.App.1981). The failure to establish any one of these elements is fatal to recovery. *Twiggs v. National Old Line Ins. Co.,* 581 S.W.2d 877, 880 (Mo.App.1979). Concealment of a fact which one has a duty to disclose properly serves as a substitute element for a false and fraudulent representation. *Osterberger v. Hites Construction Co.,* 599 S.W.2d 221, 227 (Mo.App.1980).

Plaintiffs contend that they were not informed of the encumbrance on the property by "either defendants, or their [defendants'] agents, nor *their* [plaintiffs'] agent." This silence, according to plaintiffs, amounted to a breach of defendants' duty to disclose and therefore constituted a false representation.

■ In reviewing a summary judgment, we scrutinize the record in the light most favorable to the party against whom the judgment was entered and accord that party the benefit of every doubt. *Edwards v. Heidelbaugh,* 574 S.W.2d 25, 26–27 (Mo. App.1978). However, summary judgment is appropriate when the documents before the trial court, including pleadings, depositions, admissions and exhibits show that there is no genuine of issue of material fact and that the moving party is entitled to judgment as a matter of law. Rule 74.-04(c), *Signature Pool, Inc. v. City of Manchester,* 743 S.W.2d 538, 540 (Mo.App. 1987). If there is the slightest doubt about the facts, a material issue of fact exists. *Edwards,* 574 S.W.2d at 27.

In reaching its decision, the trial court had before it the depositions of the parties, along with various exhibits filed by the parties including the sales contract, the general warranty deed conveying the property to plaintiffs, the lease encumbering the property, the warranty deed conveying the property to defendants from the prior owner, and the title insurance commitment for the plaintiffs. The documentary evidence and admitted facts lead to our resolution of this case.

On February 22, 1984, the parties entered into the sales contract. The contract contained the following property description: "in the County of St. Louis, Missouri, known and described as (legal description on sellers title to govern): 138 Powell ..." The contract further provided that the

Seller shall furnish general warranty deed, subject to deed restrictions, easements, right-of-way of record, and zoning regulations, also subject to leases and to occupancy of tenants existing on the date contract is executed by the purchasers....

Title will be marketable in fact, or purchaser will accept insurance policy issued by qualified title insurance company in lieu of strictly marketable title....

The warranty deed granting defendants title was recorded November 16, 1978, and contained the following legal description:

in the County of St. Louis and State of Missouri, to wit:

Lot 4 of ROYAL OAKS, according to the plat thereof recorded in Plat Book 46 Page 17 of the St. Louis County Records. Subject to a 15 year Lease on the southern 41.19′ quadrant, which Lease was executed on May 15, 1978 to run with the land and in favor of the owner of Lot 14 of said Royal Oaks Subdivision, and which Lease contains an option to purchase said quadrant.

138 Powell Avenue

11H 430 401.

The general warranty deed, executed April 27, 1984, conveying title to plaintiffs contains a legal description similar to that in the deed granting defendants title, and its description of the 15 year lease is verbatim. The title insurance commitment issued to plaintiffs on March 7, 1984, states the following: "the title to the land described in Schedule A hereof is at this date vested in fee simple in [defendants] subject only to the defects, objections, liens and encumbrances, all as shown as Schedule B hereof." Schedule A contains the following description: "Lot A of ROYAL OAKS SUBDIVISION, according to the plat thereof recorded in Plat Book 46 Page 17 of the St. Louis County Recorder's Office." The following appears on Schedule B:

9. NOTICE of un-recorded 15 year lease *executed May 15, 1978* in favor of the owner of Lot 14 of said subdivision, according to instrument recorded in Book 7087 Page 1885. (Affects East 24.50 feet of the South 41.19 feet of said Lot 4) (CONTAINS OPTION TO PURCHASE).

Neither plaintiff conversed with either defendant before closing. Plaintiffs viewed the property twice before closing. The leased portion of the lot was separated from the remainder by a tie-wall and wooden fence ten to twelve feet high which ran the full width of the lot and which could not be seen through. Plaintiff Johnny Triggs testified he thought the fence was on the property line:

Q. Did you notice the property behind the fence when you first went out and looked at the property?

A. There's no way you could tell by the fence being tall. I thought that would be my property line.

Q. You assumed your property line was where the fence was?

A. Right.

Plaintiffs attended the closing, but defendants did not. According to plaintiffs, they received their deed and title insurance policy by mail after closing. They denied knowledge of the lease until after receiving these documents.

■ Plaintiffs rely primarily on *Osterberger, supra,* for their contention that defendants had a duty to disclose the existence of the lease encumbering Lot 4 and that the undisputed facts do not establish that they did not breach this duty. In *Osterberger* the defendants had extensive experience in real estate sales while the buyers were inexperienced. The principal defendant was a construction company corporation. One of the corporate officers, also a defendant, prepared the sales contract, promissory note, deed of trust and warranty deed used in the transaction. Although she was aware of an existing recorded deed of trust on the home being sold, she did not disclose its existence in any of the documents, nor did she mention it when she explained the documents. All of the documents were executed on the day of the sale, which was a Sunday. The sales contract and deed had a space for existing encumbrances, but none were indicated. Two of the defendants had transferred other properties by warranty deeds which did

not disclose the existence of outstanding deeds of trust. On these facts the court held, in affirming that part of the judgment in favor of the plaintiffs, that the defendants had a duty to disclose the existing deed of trust, that constructive notice of the encumbrance under the recording act did not discharge this duty which was not otherwise discharged and that the existence of the outstanding deed of trust was a material fact. *Id.* at 227–229.

While some of the statements of law in *Osterberger* have application here, the facts of that case can easily be distinguished. Here, the terms of the contract state that the realty was being sold "subject to leases and to occupancy of tenants existing on the date contract is executed by purchaser" and that the "legal description on seller's title" would govern the property description. Over 60 days passed from the date of the execution of contract and execution of the deed. Plaintiffs inspected the premises. Also, both the title insurance commitment issued on March 7 and the warranty deed executed on April 27 disclosed the existence of the encumbrance. Whether or not they had a duty to disclose encumbrances, we believe the documentary evidence in this case clearly reveals that defendants did not conceal the existence of the lease. Because there was no concealment, plaintiffs have failed to satisfy a crucial element, and their cause of action is therefore defeated.

■ In addition, to recover for fraud in a case such as this plaintiff must show his reliance on the defendant's concealment. *Osterberger*, 599 S.W.2d at 227. Plaintiff Johnny Triggs testified in his deposition that he and his spouse examined the premises, and he assumed that the fence was the property line. Plaintiffs received an unencumbered title to the property they believed they were purchasing; they did not expect to receive the land behind the fence. In *Osterberger*, the deed of trust encumbered the entire real property. Here the lease encumbered a portion of the property which plaintiffs did not realize was part of the transaction. Thus, it was not a material fact insofar as plaintiffs were concerned.

The documentary evidence and undisputed facts in this case show defendants are entitled to judgment as a matter of law. Thus the trial court correctly entered summary judgment.

Judgment affirmed.

CRANDALL, P.J., and CRIST, J., concur.