Calvin A. SCHNEIDER, Appellant,

v.

The FORSYTHE GROUP, INC., Respondents.

No. 56052.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 29, 1989.

Richard D. Sabbert, St. Peters, for appellant.

G. Carroll Stribling, Jr., Ziercher & Hocker, P.C., St. Louis, for respondents.

HAMILTON, Presiding Judge.

Appellant Calvin A. Schneider (hereinafter Schneider) appeals a summary judgment granted in favor of the Respondents Forsythe Group, Inc. (hereinafter Forsythe) and its employee Richard Wilhelm (hereinafter Wilhelm) on December 30, 1988. The trial court held that the restrictions in Section A in the Declaration of Restrictions, Easement Grant, and Roadway Maintenance Agreement (hereinafter Declaration) of the servient estate were not extended to the dominant estate by a grant of easement. We affirm.

Schneider's underlying suit is for fraudulent misrepresentation and negligent misrepresentation in connection with a real estate sale. Both Schneider and Forsythe are real estate brokers. Schneider planned to buy two parcels of land from two of Forsythe's clients as part of a larger development plan Schneider called "the Crossings." He planned to assemble the property for "the Crossings" and immediately sell it to Kaplan Lumber Company (hereinafter Kaplan), a real estate developer. A summary of the relevant history of the properties is necessary to understand the nature of Schneider's claim.

Forsythe filed the documentation on the three plats involved in this action. Forsythe immediately conveyed all three tracts in separate transactions in June, 1978: Plat I to Dardenne Farms Partnership; Plat II to Dardenne Forest Venture; and Plat III to Ronald Henges. Dardenne Farms Plat I and the Declaration of Restrictions, Easement Grant, and Roadway Maintenance Agreement for Plat I were recorded August 17, 1978. The sole access to Plats II and III was through Plat I along Dardenne Farms Drive. On October 13, 1978, contracts for easements were recorded. Plats for II and III were prepared and recorded on August 22, 1979. All three plats were originally zoned for three-acre homesites to take advantage of septic tank ordinances.

Schneider planned to purchase Plat II and part of Plat III in order to resell immediately to Kaplan. Forsythe represented the owners of both plats. Schneider asked Richard Wilhelm, Forsythe's agent, if restrictive covenants applied to Plats II and III. Wilhelm indicated that no restrictive covenants applied and, in particular, that

no lot size restrictions applied. Schneider had the property zoned for Planned Unit Development, PUD, or for lots less than one acre and for multi-family housing. Both Schneider and Wilhelm were present for the rezoning hearing.

On the day of the closings, after Schneider had already closed on other properties making up "the Crossings," Kaplan's attorney Claude Knight said that certain restrictions in the Plat I Declaration were incorporated by reference and encumbered Plats II and III. Consequently, Emmons Title Company refused to insure over and Kaplan refused to close. Eventually Kaplan closed at a price lower than the original contract price. As a result of this reduction, Schneider claimed he lost approximately two-thirds of his expected profit of $350,000. He thereafter filed this action against Forsythe and Wilhelm for fraudulent misrepresentation and for negligent misrepresentation.

Count I of Schneider's petition alleges all the elements of fraudulent misrepresentation: that Forsythe and Wilhelm intended for Schneider to rely on the representations that the restrictions and covenants relating to lot size in Plat I did not apply to Plats II and II; that the foregoing representations were false at the time they were made; that Wilhelm knew or should have known that the representations were false at the time he made them to Schneider; that the representations were material to the purchase negotiations; that Schneider did not know the truth or falsity of the representations when made; that Schneider relied on the representations; and that, as a result of the representations, Schneider was damaged in that he received $383,000 less when he resold the land. *See* MAI 23.05. Count I avers the misrepresentation to be "that the restrictions and covenants limiting the size of the lots in Plat One of Dardenne Farms did not apply to Plats Two and Three of Dardenne Farms." Count II, which is for negligent misrepresentation, incorporates the paragraph concerning the allegedly false representation about lot size and also complains of representations "that the restrictions on Plat One of the Dardenne Farms tract did not apply to Plats

Two and Three of the Dardenne Farms tract." The lot size restriction was set forth in one paragraph within a series of separately paragraphed restrictions applicable to Plat I in Section A of the Declaration. Thus, Count II refers to restrictions in addition to the lot size restriction referred to in Count I.

In an order entered October 25, 1988, the trial court specified that the "Defendant shall file a motion for summary judgment upon the issue of whether *lot size* restrictions ... applied to Dardenne Farms Plats II and III." (emphasis added) The final paragraph of that order stated that "[p]ending the Courts [sic] ruling upon such motion, the parties will request a trial setting of remaining issues...."

On November 4, 1988, Forsythe filed a motion for summary judgment solely on the issue of whether the lot size restrictions applied to Plats II and III. The trial court had before it the plats, the Declaration, the easement contracts, and the depositions of Wilhelm and Schneider as well as the depositions of two attorneys and the president of the title company. The trial court's order of October 25 and Forsythe's motion for summary judgment were both limited to the issue of the lot size restriction.

In contrast, Schneider's suggestions in opposition set forth arguments not only concerning the lot size restriction (Count I and the lot size issue in Count II), but also concerning additional restrictions on Plat I (Count II), as well as building lines on Plats II and III. Forsythe replied to Schneider's suggestions in opposition.

In its summary judgment order, the trial court, consistent with its order of October 25, stated that "the sole issue now before the Court is whether the restrictions set forth in Section A of the Declaration of Restrictions, Easement Grant and Roadway Maintenance Agreement concerning the three acre lot size restrictions are applicable to Plats II and III by virtue of the Contract for Easement Right of Way...." The trial court then, however, entered a more expansive order which stated that

the restrictive covenants found in Section A of the Declaration of Restrictions, Easement Grant and Roadway Maintenance Agreement does not apply to Plats II and III, the land purchased by Plaintiffs, and that the Defendant Rick Wilhelm's statement that the three acre restrictions of Plat I did not apply to Plats II and III was in fact true and that no misrepresentation could have occurred. The Court therefore hereby orders that Plaintiff's petition in all counts be dismissed at Plaintiff's cost.

Although the parties make numerous references to a stipulation as to the issue involved, no such stipulation appears in the record; and, although the trial court purports to limit itself to the sole issue of the lot size restriction, its order encompasses the broader legal issue of whether any of the restrictions contained in Section A of the Declaration apply to Plats II and III.[1] Furthermore, the trial court adopts and incorporates into its order Forsythe's Suggestions in Support of Motion for Summary Judgment which address not only the lot size restrictions, but also other possible restrictions on Plat I and which conclude as a matter of law that none of these restrictions applies.

Schneider asserts the trial court erred in granting summary judgment because (1) the specific language of the Contract for Easement and the recitations and legends of the plats make the restrictions applicable; (2) all three plats were part of a single plan of development; and (3) a genuine issue of material fact exists in that there was no determination that the building lines and easements on the plats would allow development in accordance with PUD zoning.

A summary judgment is appropriate when the documents before the court show no genuine issue of material fact and the moving party is entitled to the judgment as a matter of law. Rule 74.04(c); *Triggs v. Risinger*, 772 S.W.2d 381, 382 (Mo.App. 1989). Material facts are facts that have such legal probative value as would control or determine the litigation. *Dunbar v. Allstate Ins. Co.*, 584 S.W.2d 123, 124 (Mo. App.1979). This court must scrutinize the record in the light most favorable to the party against whom the judgment was entered, according that party the benefit of every doubt. *Triggs*, 772 S.W.2d at 382.

As framed by Schneider in Points I and II, the issue of whether restrictions in Plat I applied to Plats II and III is a legal, not factual, issue. Two of the primary documents before the trial court for its interpretation were the Declaration for Dardenne Farms Plat I and the Contract for Easement Right of Way (hereinafter Contract).[2]

The Declaration consists of five sections: A. Covenants; B. Roadway Maintenance; C. Trustees; D. Assessments by Trustees; and E. Miscellaneous. The parties do not dispute that Sections B, C, D, and E apply to Plats II and III. The Contract specifically incorporates these sections. Schneider contends that the existence of Dardenne Farms Drive throughout all three plats made any Restrictions in Sections B, C, D, and E applicable to Plats II and III. However, Forsythe's Suggestions in Support of the Motion for Summary Judgment, incorporated into the trial court's order state that,

> [o]nly Section A of the Subdivision Declaration contains restrictive covenants with respect to the use of the Lots in the Property. Sections B, C, D, and E have no restrictive covenants whatsoever.

---

1. Not only do the briefs make reference to a stipulation as to the issue before the court, but Forsythe's brief asserts the parties also entered a stipulation of facts. A search of the voluminous legal file, which fails to provide a complete index as required by Rule 81.14(b), reveals that neither the issue stipulation nor the fact stipulation was reduced to writing and included as a part of the record. Both parties refer to what was discussed in chambers. Without a record of such discussions, however, this Court can only review what is before it in terms of the scope of the petition and the final order of summary judgment.

2. There are two contracts for easement: one for Dardenne Forest Venture's Plat II and one for Henges' Plat III. They are identical in their substantive provisions and the singular term Contract will be used to refer to both.

Furthermore, with respect to the "whereas" clauses preceding Section A of the Declaration, Forsythe's Suggestions in Support of the Motion for Summary Judgment conclude that those clauses do not extend restrictions to Plats II and III.

Section A of the Declaration contains nine numbered sub-sections. Sub-section I defines the term *property* as Dardenne Farms Plat I and the lots or tracts thereof. Sub-section II states the purpose and effect of the covenants. Sub-section III sets the term of the agreement at twenty years with automatic extensions. Sub-section IV applies the Declaration to purchasers at foreclosure. Sub-section V establishes general residence restrictions. These restrictions include a ban on manufacturing or commercial enterprise; a minimum square footage requirement, a ban on mobile homes, and a roofing requirement. Sub-section VI requires roads and driveway entrances to be paved and sets the standard for drainage and fencing. Sub-section VII is a restriction on the types of animals that may be kept on the property. Sub-section VIII establishes restrictions on building lines, including a restriction on subdividing lots to fewer than three acres. Sub-section IX provides for enforcement of the covenants.

The Contract consists of eight numbered paragraphs preceded by four "whereas" clauses. The first paragraph grants an easement over Dardenne Farms Drive. The second numbered paragraph is an agreement that the grantee will abide by Sections B, C, D, and E of the Declarations. The third paragraph deals with pro-rata assessments for maintenance for Dwelling Unit Owners as opposed to Lot Owners under the Declaration. The fourth paragraph empowers the trustees to assume maintenance of roads or walkways built on Plat I by the grantees and to assess the grantees for their maintenance. Paragraph five states that the easement grant runs with the land. Paragraph six limits the use of the easement to residential traffic and prohibits access to any manufacturing or commercial facilities that may ever be located on the dominant properties. Paragraph seven states that anyone holding title or interest in the land will be treated as a "Lot Owner" under the Declaration and referred to as a "Single Dwelling Unit Owner" in the contract. The final paragraph provides for forfeiture of the easement for failure to comply with the contract.

■ The issue before the trial court was whether the documents properly construed made the restrictions that were applicable to Plat I also applicable to Plats II and III. The law does not favor restrictions on the free use of land. Restrictions must be either "expressly stated or most clearly inferable from a writing." *Campbell v. Stout*, 408 S.W.2d 585, 588–89 (Mo.App.1966). Such restrictions are strictly construed and doubts with respect to their application are resolved in favor of the free use of land. *Yalem v. Industrial Dev. Auth.*, 700 S.W.2d 103, 105 (Mo.App.1985). This principle of strict construction, however, should never be used to defeat the plain and obvious purpose of the restriction. *Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.*, 746 S.W.2d 642, 644 (Mo.App.1988). Language used in the entire instrument, not in just one clause, will be considered. *Paddock Forest Residents Ass'n. v. Ladue Serv. Corp.*, 613 S.W.2d 474, 477 (Mo.App.1981).

■ In his first point, Schneider asserts that the language of the documents involved expressly extends the restrictive covenants of Plat I to Plats II and III. Schneider refers to the "whereas" clauses of the Contract; to paragraph seven of the Contract; to provisions for extension within the Declaration; and to recitations and legends on the plats as extending the Declaration's restrictive covenant sections to Plats II and III. Schneider further contends that even if the express language does not clearly extend the restrictions, it creates an ambiguity that leaves unresolved an issue of material fact concerning the intent of the parties.

Schneider initially contends that the last "whereas" clause of the Declaration expressly provides for extension of the agree-

ment to Plats II and III. The clause states in full:

WHEREAS, in addition to the easements, rights and uses pertaining to the Dardenne Farms Drive as in this Agreement set forth, Grantor further provides for the extension of this Agreement, or parts thereof, and further provides for additional grants of easements, rights and use of the Dardenne Farms Drive, when applicable, to contiguous property owners to the Property or such property owner's grantees, transferee and assigns upon acceptance of those terms and conditions hereinafter set forth pertaining to roadway maintenance and operation.

Schneider singles out the phrase, "Grantor further provides for the extension of this Agreement ...," as extending Plat I restrictions to Plats II and III. This phrase, however, when read in context, provides for extension of the Declaration or parts of it for additional grants of easements, rights, and use of Dardenne Farms Drive to contiguous property owners to Plat I conditioned upon the acceptance of the terms pertaining to roadway maintenance and operation. Standing alone, this phrase extends no restrictions to property benefitting from easements. The trial court correctly states that the Declaration "in and of itself cannot as a matter of law apply to Plats II and III for the reason that Defendant Forsythe Group had deeded Plats II and III to Dardenne Forest Venture and to Henges, respectively, almost two months before the Declaration of Restrictions, Easement Grant and Roadway Maintenance Agreement was executed and filed by Dardenne Farms Partnership."

Schneider next contends that the Contract, in conjunction with the provision for extension of the Declaration, extends the restrictions to plats benefitting from the easement. Schneider identifies two specific provisions within the Contract: the second "whereas" clause, which refers to the Declaration as "incorporated herein by reference," and paragraph seven of the Contract, which provides that anyone holding title or interest in the land will be treated as a "lot owner" under the Declaration and is subject to the terms and provisions of

the Declaration. The second "whereas" clause states in full:

WHEREAS, GRANTOR has previously entered into an agreement entitled "Declaration of Restriction, Easement Grant and Roadway Maintenance Agreement for Dardenne Farms Plat I," hereinafter referred to as "AGREEMENT," filed in the Office of the Recorder of Deeds for St. Charles County on August 17, 1978, Plat Book 811, Pages 1062–1089, incorporated herein by reference hereto, which inter alia, provides for the TRUSTEES appointed thereunder to make additional grants of easements, rights and use of the Dardenne Farms Drive to contiguous property owners of that land described in Exhibit "A" provided such property owners and their grantors, transferees and assigns accept those terms and conditions pertaining to roadway maintenance and operation.

Adverting to the language that incorporates the Declaration by reference, Schneider argues that the entire Declaration, including Section A Covenants, applies to Plats II and III. However, other portions of the Contract repeat the necessity of agreeing to roadway maintenance provisions. In fact, paragraph two of the Contract specifically defines the trustee's enforcement powers in terms of Sections B, C, D, and E of the Declaration. Paragraph two of the Contract makes no reference to Section A covenants.

Paragraph seven of the Contract states in full:

Any individual, association, partnership or corporation which shall own any title to the land or any parcel or parcels thereof, regardless of the number of acres, or possess any ownership interest in a structure or structures, including but not limited to residential home or multi-family dwelling unit that were constructed on the LAND or any portion thereof, then for purposes of the Agreement, this individual, association, partnership or corporation shall be treated in all respects subject to the terms and provisions of the Agreement, including but not limited to voting and assessments, general and

special, as a Lot Owner, herein referred to as a "Single Dwelling Unit Owner," for each parcel or parcels or each residential home or multi-family dwelling unit so owned. Dardenne Forest [or Henges] shall be considered a Single Dwelling Unit Owner.

Schneider contends that the "subject to" language in this section makes Plats II and III subject to all of the provisions in the Declaration, including the restrictive covenants in Section A. Schneider relies on *Fregalette v. Meyer* which held that use of the term "subject to" in a deed conveying an interest in real property is a qualification of the estate granted. *Fregalette v. Meyer*, 695 S.W.2d 935, 936 (Mo.App.1985). *Fregalette*, however, is distinguishable from the present facts. The language in *Fregalette* was "[s]ubject to *restrictions* contained in," a specific reference to restrictions in a lease. *Fregalette*, 695 S.W.2d at 935. (emphasis added). The language of the deed in *Fregalette*, therefore, complies with the "expressly stated" or "most clearly inferable" standard of *Campbell*.

In contrast, the language in the Contract before us refers to the Agreement (Declaration) generally and is in the context of a paragraph dealing with rights and duties related to roadway maintenance. Furthermore, Schneider's interpretation is inconsistent with other language in the same paragraph and in the remainder of the Contract. Language in the paragraph refers to multi-family dwellings and the preceding paragraph makes reference to "manufacturing or commercial facilities that may ever be located on the properties of" Plats II or III. All such development would be inconsistent with the restrictions contained in Section A of the Declaration. Nor can the reference be to already existing structures. The land that became Plats II and III was raw, undeveloped and unplatted at the time of execution of the Contract. In the context of the document as a whole, the purpose of paragraph seven is to extend the definition of "lot owner" to include owners of land in Plats II and III, which land had not yet been developed into lots. Paragraph three of the Contract strongly suggests the purpose of paragraph seven is definitional for clarifying assessment liabilities under the Declaration because it refers to pro-rata assessments as to Dwelling Unit Owners to be defined later in the Contract.

None of Schneider's arguments that specific language extends the restrictions of Plat I to Plats II and III meets the "expressly stated" or "most clearly inferable" standard of *Campbell*. *Campbell*, 408 S.W.2d at 588–89. Schneider asserts that, if the intention is unclear, *Paddock Forest Residents Ass'n. v. Ladue Serv. Corp.*, 613 S.W.2d 474 (Mo.App.1981), requires consideration of the intentions of the grantor. If such were the case, a genuine issue of material fact would render summary judgment inappropriate. However, in *Paddock* applicability of the restrictive covenants was undisputed. The parties did disagree about the meaning of certain terms in the restrictive covenant. On that issue, the *Paddock* court held that dismissal is inappropriate absent inquiry into the intentions of the parties to the agreement. *Paddock*, 613 S.W.2d at 477.

Schneider also contends the language or the building lines contained on Plats II and III subject the property reflected thereon to restrictions. Appellant points to the language contained on each Plat:

Said subdivision shall be subject to the Conditions, Reservations and Restrictions as set forth in an instrument dated _____ and filed for record in Book 818 on Pages 382 thru 389 in the Office of the Recorder of Deeds of St. Charles County, Missouri.

This is a reference to the Contract. Schneider emphasizes the use of the term *Restrictions*, as opposed to the term *easement*, contending that use of the former term expresses an intention to include the Restrictions under Section A of the Declaration. That language, however, makes no direct reference to any part of the Declaration. A less strained interpretation of the language is that the subdivision is subject to the Conditions found within the Contract. These include Sections B through E of the Declaration that are specifically and

clearly incorporated by reference in paragraph Two of the Contract and the restrictions as to the use of the easement within the Contract itself.

■ Schneider also points to the designation on Plat I referring to the areas that would later be Plats II and III as areas for "future development." This relates to Schneider's second point that the restrictive covenants applicable to Plat I also apply to Plats II and III because all three plats are part of a singular development. Appellant cites *Campbell v. Stout*, 408 S.W.2d 585 (Mo.App.1966) and *Lake Sherwood Estates v. Continental Bank*, 677 S.W.2d 372 (Mo.App.1984). *Campbell* recognizes that a reciprocal negative easement can be implied when "a common grantor develops a tract of land for sale pursuant to a general plan or scheme of improvement, and sells a substantial number of lots subject to restrictions of benefit to the land retained." *Campbell*, 408 S.W.2d at 589. *Lake Sherwood* merely recognizes that reciprocal negative covenants may be implied under certain circumstances, but it does not further address the doctrine as these circumstances were neither raised by the pleadings nor would they have been decisive in that case. *Lake Sherwood*, 677 S.W.2d at 375. Appellant cannot demonstrate that a common grantor developed the land. The grantor, Dardenne Farms Partnership, at no time owned all of the property involved. Forsythe briefly owned the land but conveyed it to three different owners before the restrictions in question even applied to Plat I.

■ Finally, Schneider asserts that the building lines and the recitations on Plats II and III created restrictions and that whether those building lines can be engineered around is an issue of material fact. Schneider's petition in Count I specifically refers to "restrictions and covenants limiting the size of the lots in Plat One of Dardenne Farms." Count II, while more expansive in not limiting restrictions to lot size, still qualifies restrictions to "restrictions on Plat One of the Dardenne Farms tract." Although Schneider attempted to amend his petition to include other restric-

tions, an amendment was never effected. Thus, Schneider failed to plead facts in support of his theory concerning restrictions created on Plats II and III by building lines and recitations. As a result, we cannot address it on appeal. An appellant is bound by the theory submitted to the trial court. *Roth v. Phillips Petroleum Co.*, 739 S.W.2d 598, 600 (Mo.App.1987).

Judgment affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.