Jack B. SIMCOX and Mary B.
Simcox, Respondents,

v.

John J. OBERTZ, Jr., and Margaret I.
Obertz, Appellants.

No. 56876.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 9, 1990.

James Allan Borchers, Thomas A. Federer, St. Charles, for appellants.

Deborah Jean Tomich, St. Charles, for respondents.

CARL R. GAERTNER, Judge.

Appellants John and Margaret Obertz appeal from an adverse judgment requiring that they remove a storage structure from their property. We affirm in part and reverse in part.

Appellants and respondents Jack and Mary Simcox are next-door neighbors in the Oak Hill Estates Subdivision in St. Charles County. The Simcoxes were the first homeowners in the subdivision, while the Obertzes purchased the last house built in Oak Hill Estates in January of 1986. In June of that year, Mr. Obertz poured a concrete pad in his backyard in preparation for erecting a storage building behind, but not connected to, his house. Mr. Simcox personally contacted Mr. Obertz, informed him of the subdivision restrictions and provided Mr. Obertz with a copy of same. The Simcoxes also retained an attorney, who sent the Obertzes a letter notifying them that placing a building on their property violated the restrictive covenants of the subdivision and that further action would be taken if construction proceeded.

Construction ceased for approximately two years, during which time Mrs. Obertz was recovering from illness. In June, 1988, construction resumed, and the building was completed that month. The building is a detached structure fifteen feet tall with a barn roof, visible from nine of the twelve houses in the subdivision. The Obertzes use it for storing three lawn mowers, snow tires, a snow blower, shovels, firewood, gasoline cans, ladders, a hose, a wheelbarrow, and sundry other items. It also contained a loft, which requires a ladder to access, where cases of motor oil and gallon jugs of windshield wiper fluid are stored. The Obertzes planted white pine trees in September and October of 1988 in order to obscure the shed from the view of the surrounding houses.

The Simcoxes filed their petition for injunction on September 13, 1988. After a bench trial on May 22, 1989, the trial court found in favor of the Simcoxes, requiring removal of the building within ninety days, and awarding them attorney's fees. The Obertzes appeal this decision.

Appellants' first point on appeal asserts the trial court erred in finding the storage shed violated the subdivision restrictions, because service sheds are allowed under the covenants, or in the alternative, that the covenants are so ambiguous as to require resolution in favor of free use of the land.

The pertinent provisions of the restrictive covenant in question are as follows:

## ARTICLE V

### General Restrictions

Declarant herby [sic] covenents [sic] and grants to the Association and its successors and assigns, that each of said Lots in the Subdivision and the person or persons, corporation or other legal entity owning the same, shall stand, be bound and chargeable to the Association and its successors and assigns, and to the other Lot Owners, for the following building erection and use restrictions, and lot uses and restrictions, to wit:

(a) *Residence Use*

All Lots shall be used for no other purpose except as single family residences, [sic] Businesses operated from

homes are expressly precluded in Oak Hill Estates. No buildings shall be erected, placed or permitted to remain on any lot other than one detached single family dwelling and private attached two-car garage.

(o) *Storage*

All clothes line equipment [sic] garbage cans, service sheds, wood piles, and storage piles shall be kept within the confines of each rear yard so as to conceal them from view of neighboring Lots and streets except that garbage cans can be placed at curb for regular trash pickups. All rubbish, trash, and garbage shall be regularly removed from each Lot and shall not [sic] allowed to accumulate thereon.

■ The standard of review of a court-tried equity action is well established. The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Baker v. McCue–Moyle Dev. Co.,* 695 S.W.2d 906, 911 (Mo.App.1984). In the absence of findings of fact, we may assume all fact issues were resolved in accord with the judgment.[1] Rule 73.01(a)(2); *Estate of Strauss v. Schaeffer,* 781 S.W.2d 274, 275 (Mo.App. 1989).

■ There are also several long-standing precepts to keep in mind when reviewing a case involving restrictive covenants. Restrictions upon free use of land are not favorites of the law. *Schneider v. Forsythe Group, Inc.,* 782 S.W.2d 139, 143 (Mo.App.1989). Restrictive covenants are therefore narrowly construed, and are not extended to include anything not clearly expressed within the document. *Lake Saint Louis Community Ass'n v. Ravenwood Properties, Ltd.,* 746 S.W.2d 642, 644 (Mo.App.1988). Doubts respecting application of a restriction are resolved in favor of free use of the land, but the plain and obvious intent and purpose of the restriction controls. *Id.* Restrictive covenants are examined in the context of the entire instrument, not in just a single clause. *Schneider,* 782 S.W.2d at 143. Absent any indication that a "special meaning" of a particular word is intended, we assign plain, ordinary, usual definitions to the language used. *Lake Saint Louis,* 746 S.W.2d at 644.

■ Appellants contend the trial court erred in ordering the removal of their "storage shed" because Article V(o) of the Covenants and Restrictions "contemplated and allowed for such 'service sheds' ". Alternatively, they argue that the total prohibition of any out-buildings under Article V(a) conflicts with the allowance of service sheds under Article V(o) creating an ambiguity which must be resolved in favor of the free use of property by the owner. Under the facts of this case we reject both alternatives.

Appellants' contention is predicated upon a syllogistic argument that a shed is a structure used for storage; they use their building for storage; therefore, it is a shed. The fallacy of this argument lies in its major premise. Not all structures used for storage are sheds; some are warehouses. The full definition of the noun "shed", as opposed to the rather fragmentary dictionary definitions cited by appellants in their brief, contained in *Webster's Third New International Dictionary of the English Language,* unabridged (1981), is as follows:

A slight structure (as a penthouse, lean-to, or partially open separate building) built primarily for shelter or storage: OUT BUILDING; *esp:* a single-story building with one or more sides unenclosed.

A permanent structure built upon a concrete slab twelve feet wide, fifteen feet deep and fifteen feet high can hardly be considered slight. Plaintiffs' building is neither single story nor partially unenclosed. Further, reading Article V of the Covenants and Restrictions in its entirety demonstrates a focus upon the protection

---

1. Appellants made a general request below for findings of fact and conclusions of law. A general request for findings is insufficient to require the trial court to make specific findings. *Mills v. Mills,* 663 S.W.2d 369, 375 (Mo.App. 1983).

of open vistas and the prohibition of sight obstructions, not the use to which an outbuilding may be put.

Even if we were to accept appellants' argument that their building could be considered a "service shed", they admit it is not concealed from neighboring lots and from the street. The Restrictions speak to present concealment from view, not to possible future concealment after three more years, when the pine trees planted around the building will, as predicted, have attained sufficient height and density to provide screening. We find no error in the trial court's conclusion that the building erected by appellants, over the expressed objection of their neighbor and with actual notice of the subdivision restrictions, was in violation of those restrictions.

■ Appellants also contend that respondents should be denied relief in equity under the "unclean hands doctrine." This contention stems from the admission by Mr. Simcox on cross-examination that from December, 1985 to June, 1986 he conducted some insurance business from his home and that he had constructed a deck on his residence without clearance from the subdivision Architectural Committee. Appellants argue that these violations of the very restrictions respondents seek to enforce should preclude them from equitable relief. As stated in *Osterberger v. Hites Constr. Co.*, 599 S.W.2d 221, 229 (Mo.App. 1980), "... the hoary and murky doctrine that 'one who seeks equity must come in with clean hands' applies only to a party who shows he was injured by the asserted inequitable conduct." Appellants made no such showing. In fact, no mention of these alleged restriction violations was made by appellants during their testimony. Moreover, Mr. Simcox's admission that perhaps as many as ten insurance clients came to his home between December, 1985 and June, 1986, even overlooking the triviality of the matter, ended near the time appellants moved into the neighboring residence and over two years before the construction of their building and the institution of this litigation. Prior misconduct of a plaintiff which has ended before the commencement of the action should not bar his right to equitable relief from subsequent conduct of the defendant. *River Corp. v. Redpath*, 466 S.W.2d 140, 145 (Mo.App.1971). Point denied.

Appellants' final point challenges the trial court's award of attorney's fees to respondents.

■ The rule in Missouri is that, in the absence of a statutory or contractual agreement to the contrary, attorney's fees are not awarded as of right even to a successful litigant. *Harris v. Union Elec. Co.*, 766 S.W.2d 80, 89 (Mo. banc 1989) *cert. den.* —— U.S. ——, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989); *Nichols v. Bossert*, 727 S.W.2d 211, 213 (Mo.App.1987). Fees can be awarded in an equity action, *Harris*, 766 S.W.2d at 89, but only in exceptional circumstances. *Nichols*, 727 S.W.2d at 213; *Farley v. Johnny Londoff Chevrolet, Inc.*, 673 S.W.2d 800, 806 (Mo.App.1984).

■ Here, the trial court awarded attorney's fees not because of exceptional circumstances, but because "... I think the covenants provide for it ... [.]" Close inspection of the covenants reveal only one instance where attorney's fees are awardable, and that is when an action is required to collect delinquent assessments. The general provisions relating to enforcement of the covenants, by either the Oak Hill Estates Homeowners Association or by individual owners, make no mention of any right to collect attorney's fees. The trial court's award of attorney's fees was therefore erroneous.

We therefore reverse the trial court as to the award of attorney's fees, and affirm in all other respects.

HAMILTON, P.J., and STEPHAN, J., concur.