**SPEEDIE FOOD MART, INC., et al.,**
**Plaintiffs–Appellants,**

v.

**Paul L. TAYLOR, Elizabeth G. Taylor**
**and U–Gas, Inc.,**
**Defendants–Respondents.**

Nos. 57912, 57913.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 9, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 7, 1991.

Application to Transfer Denied
June 11, 1991.

Isidore Ireland Lamke, Robin E. King, Washington, for plaintiffs-appellants.

Floyd Terral Norrick, Hillsboro, for defendants-respondents.

STEPHAN, Judge.

This is an appeal from the trial court's order denying appellants' petition for permanent injunction and declaratory judgment. Appellants, Speedie Food Mart, Inc., Robert Schneider, Beverly Schneider, Ronald Schneider, Cleon Schneider, Rhonda Schneider, Dennis Schneider and JoAnn Schneider, sought to have the trial court declare that respondents, Paul and Elizabeth Taylor and U-Gas, Inc., were in violation of a restrictive agreement. The trial court found that there was a restrictive aspect to the agreement, but that respondents were not in violation of it. Both parties appeal; we affirm.

Pursuant to the will of Spencer Irwin Groff, approximately ten acres of real estate, located near Highway I-44 in Gray Summit, Missouri, was placed in a testamentary trust (the "Trust"). Missouri Baptist Foundation was designated trustee of the Trust. On September 28, 1968, the Trust leased part of the estate (Tract I) to Phillips Petroleum Company. The lease contained the following provision:

> [S]aid premises and property to be used for the purpose of storing, selling and distributing gasoline, oil, oil products, petrochemicals, automobile tires and accessories, and any other goods, wares and merchandise, and at Lessee's option may be used for the conduct of any other lawful business thereon, subject to the Lessors approval.

Phillips' rights and interests in the lease were subsequently assigned to Hatcher Oil Company. In July 1982, Hatcher Oil's interest was assigned to U-Gas, Inc.

From 1968 until the present, the location has been used as a gasoline service station for the sale of gasoline, other petroleum products and automotive supplies. In the beginning, there was also the sale of snacks, candy, chips, beverages and cigarettes, primarily from vending machines. In addition, two service bays were leased to a third party and used for automotive repairs.

Following the assignment to U-Gas, changes were made to increase the volume of business. Starting in 1983 respondents made some interior modifications to increase the floor space. They also installed refrigeration units and gondola shelves for grocery items.

On March 15, 1982, the Trust sold a different part of the trust estate (Tract II) to appellants. Pursuant to the sale the parties, appellants and the Trust, entered into a separate agreement which was duly recorded. This agreement, which affected the property then being leased by respondents, stated:

> Now Therefore, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, and the mutual covenants to be made and performed by and between the Parties hereto, [the Trust] hereby covenants and agrees with [Speedie Food Mart, Inc.], and its successors and assigns, that the above described Tract I shall not for a period of Twenty (20) years from the date hereof be used for a grocery store, supermarket or convenience store.

This agreement was made subject to certain prior existing leases; one being the lease to Phillips, subsequently assigned to U-Gas.

By letter dated March 17, 1983, Missouri Baptist Foundation, as trustee, notified respondents that it had received complaints regarding their remodeling. Respondents answered that they felt the expansion was

"within the purpose provision of the lease" and did not require lessor's prior approval. Respondents did not change their operation because of this complaint and the record indicates there was no further communication between the parties.

On October 15, 1987, the Trust sold Tract I of the estate to the Taylors. At or near that time, respondents terminated the sublease with the third party for the service bays, and decided to completely remodel the existing facility. A new modern canopy was installed, the exterior of the building was remodeled, new tanks and pumps were installed and some landscaping was added. The interior of the building was extensively remodeled: the service bays were eliminated, a new floor, a drop ceiling and new lighting were all installed. Further, a bakery-deli, along with some booths and tables, was added. The changes cost respondents approximately $325,000 to $350,000. The purpose was to make U–Gas a one-stop service center for travelers on the highway.

Appellants argue that the 1968 lease only allows respondents to sell gas, oil and automotive products, and that any other use of the premises requires the lessor's prior approval. They further argue that the lessors cannot give their approval because of the 1982 restrictive agreement.

■ We first consider a motion taken with the case. Respondents moved that we strike appellants' prayer and argument in the conclusion of their brief because they pray for damages and costs, including attorneys' fees. Appellants did not include this issue in their statement of issues expected to be raised on appeal pursuant to Local Rule A.01, nor did they assert trial court error for failing to award damages in their points relied on. Issues not presented in the points to be argued in the appellate brief are deemed abandoned and will not be considered. *Jones v. Eagan*, 715 S.W.2d 596, 596 (Mo.App.1986). Respondents' motion to strike appellants' prayer for damages and costs is sustained.

■ The standard of review in a court-tried action in equity is well established. The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A judgment involving the construction or enforcement of restrictive covenants is accorded the deference granted to other court-tried actions. *Thomas v. DePaoli*, 778 S.W.2d 745, 747 (Mo.App.1989).

■ The primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention. *Edgewater Health Care, Inc. v. Health Sys. Mgmt., Inc.*, 752 S.W.2d 860, 865 (Mo.App.1988). A contract which is clear and unambiguous on its face is not open to judicial construction. *Thomas*, 778 S.W.2d at 747. The initial question to be determined is whether an ambiguity exists. *Id.*

■ An ambiguity exists in a written instrument when the wording is reasonably susceptible of different interpretations. *Edgewater Health Care*, 752 S.W.2d at 865. The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person. *Jim Carlson Const., Inc. v. Bailey*, 769 S.W.2d 480, 482 (Mo.App.1989). A contract is not rendered ambiguous by the fact that the parties differ as to the proper construction to be given it. *Edgewater Health Care*, 752 S.W.2d at 865.

We find nothing ambiguous in the covenants before us. We, therefore, will construe them by attempting to ascertain the original intention of the parties, and by applying the rules relating to restrictive covenants.

■ Restrictions upon the free use of land are not favorites of the law. *Simcox v. Obertz*, 791 S.W.2d 440, 442 (Mo.App. 1990). They are, therefore, narrowly construed and are not extended to include anything not clearly expressed within the document. *Id.* Doubts regarding application

of a restriction are resolved in favor of the free use of land. *Id.* Regardless, this principle should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction. *Lake Saint Louis Community Ass'n v. Ravenwood Prop., Ltd.*, 746 S.W.2d 642, 644 (Mo. App.1988). Language used in the entire instrument, not merely one clause, will be considered. *Schneider v. Forsythe Group, Inc.*, 782 S.W.2d 139, 143 (Mo.App.1989). The proponent of the application of a restriction bears the burden of proving the extent and application of the restriction. *Yalem v. Industrial Dev. Auth. of the County of St. Charles*, 700 S.W.2d 103, 105 (Mo.App.1985).

■ Appellants interpret the 1968 lease provision to mean that the only purpose for which the premises may be used, without the lessor's prior approval, is as a gasoline service station, and that the business of a gasoline service station only includes the sale of gasoline and automotive supplies. The trial court found that the parties who signed the lease intended for it to be a single purpose restrictive lease; the purpose intended was a gasoline service station and the sale of products related to a gasoline service station, but not limited to gasoline, oil, automotive products and accessories. The sale of goods, wares and merchandise not related to the business of a gasoline service station would be restricted. The court went on to find that the sale of food and deli items, in conjunction with the operation of a gasoline service station, was not prohibited by the lease.

Appellants' argument suggests that the phrase "subject to Lessors (sic) approval" modifies the entire paragraph. A clear reading of the provision, however, defeats this notion. The paragraph allows two separate and distinct purposes: 1) storing, selling and distributing gasoline, oil, oil products, petrochemicals, automobile tires and accessories, *and* any other goods, wares and merchandise; and, 2) for any other lawful purpose, subject to the lessor's approval. The question is, what *goods*, wares and merchandise are allowed.

The original parties to the lease intended that the property be used for a gasoline service station. There was testimony regarding what constitutes a competitive gasoline service station. In order to compete in today's market it is necessary to include grocery items and food as part of the business, particularly when the business is designed to draw most of its customers from nearby interstate highways.

We find no error in the trial court's determination that the lease provision allowed respondents' to sell food and deli items. We further hold that it does not prohibit respondents' goods, wares and merchandise which were classified as "grocery items." We also agree that there is a clear restriction contained in the lease. Respondents may only sell merchandise which enables them to remain competitive in the service station business and this is what the trial court found they were doing. Even with the remodeling, gasoline sales exceeded inside sales by 75% to 25%.

■ Appellants further argue that respondents are bound by the 1982 agreement between the Trust and Speedie Food Mart. The trial court did not specifically rule on this point. We, therefore, assume the facts were resolved in accord with the judgment. Rule 73.01(a)(2); *Simcox*, 791 S.W.2d at 442.

The record indicates that Missouri Baptist Foundation sent a letter of complaint to respondents in 1983. Respondents answered by explaining their intention to expand the business to include grocery items. No further action was taken. This all occurred after the 1982 agreement was entered into by the parties.

Respondents had notice of the 1982 agreement when they purchased Tract I, but went ahead and renovated the property in 1987. The cost of the renovation was approximately $325,000 to $350,000. Appellants did not file their petition for permanent injunction and declaratory judgment until October 1988. We find, based on these facts, that appellants are estopped from asserting their rights under the 1982 agreement.

Estoppel arises from the unfairness of permitting a party to assert rights belatedly if he knew of those rights but took no steps to enforce them until the other party has, in good faith, become disadvantaged by changed conditions. *Stenger v. Great S. Savings and Loan Ass'n,* 677 S.W.2d 376, 383 (Mo.App.1984). Knowledge of the situation is required by the one against whom estoppel is asserted. *Id.* at 383–384.

Appellants were parties to the 1982 agreement. They, therefore, had knowledge of their rights under that agreement. Respondents began selling grocery items in 1983. When questioned about it, they answered that they were conducting themselves within the terms of the lease. They received no reply. It was reasonable for them to assume they could proceed with their plans and that the objection to the sale of grocery items had been waived.

It would work a grave injustice to require respondents to remove competitive aspects of their business when appellants were slow to assert their rights. The evidence supports a finding that appellants are estopped from demanding the agreement be enforced against respondents.

Respondents' cross-appeal argues that the trial court erred in finding that the lease provision was restricted to goods, wares and merchandise relating to the business of a gasoline service station. We have already addressed this point in appellants' first argument and decline to do so again.

Respondents also argue that they should have received attorneys' fees. The rule in Missouri is that, in the absence of a statutory or contractual agreement to the contrary, attorneys' fees are not awarded as of right even to a successful litigant. *Simcox,* 791 S.W.2d at 443. Fees may be awarded in equity actions but only in exceptional circumstances. *Id.* There were no exceptional circumstances here, and the trial court committed no error in failing to award attorneys' fees.

The judgment of the trial court is affirmed in all respects.

REINHARD, P.J., and CRANE, J., concur.