**Mike PERRY, et al., as Trustees of Twin River Estates Subdivision, Plaintiffs–Respondents,**

v.

**Frank SPAVALE, et ux., Defendants– Appellants.**

No. 59257.

Missouri Court of Appeals, Eastern District, Division Three.

April 14, 1992.

Louis J. Weber, Hillsboro, for defendants-appellants.

Terry Arnold Parkinson, St. Louis, for plaintiffs-respondents.

STEPHAN, Judge.

Frank Spavale and his wife Joetta H. Spavale appeal from the judgment of the trial court enjoining them from completion of the erection of a radio transmission tower upon their property. Respondents Mike Perry, Carolyn Jonas, Dennis Donahue, Gary Favier, and Donna Etela as trustees of Twin River Estates Subdivision in Jefferson County initiated this action for injunctive relief based upon certain restrictive covenants applicable to appellants' property. The trial court found construction of the radio tower violative of these restrictive covenants. We agree.

Appellants are owners of residential property on 7073 Spavale Drive in the Twin River Estate Subdivision in High Ridge, Missouri. During construction on their property of a radio transmission tower, approximately 120 feet tall, appellants received a letter from respondent trustees dated November 16, 1989, informing them that the subdivision's restrictive covenants prohibited commercial structures. The subdivision's restrictive covenants are not extensive. They provide, in pertinent part, as follows:

1. LAND USE AND BUILDING TYPES

No lot shall be used for other than residential purposes.... Except where specifically approved by the trustees, no building shall be erected, altered, placed or permitted to remain on any lot other than one detached *single family dwelling,* not to exceed two (2) stories in height and a private garage or carport for not more than three (3) cars.

\* \* \* \* \* \*

2. NUISANCES

No noxious or offensive activity shall be carried on upon any lot, nor shall anything be done thereon which may be, or may become an annoyance, nuisance or eyesore by conformity to the standards of the neighborhood.

\* \* \* \* \* \*

6. SUBDIVISION CONTROL

No building or premises shall be used for purposes prohibited by law or ordinance and nothing shall be done which may be or hereafter become a nuisance to the owners of surrounding lots in the area.... [E]nforcement of said restrictions shall reside with the trustees hereinafter referred to in the Trustee's Agreement for Roads.

(Emphasis in original.)

▆ Trustees subsequently sought injunctive relief to enjoin the tower's construction as violative of the subdivision's restrictive covenants. After issuing a preliminary injunction, the trial court held an evidentiary hearing concerning the final injunction. The trial court found that appellants' purpose for the tower's construction was commercial and that such activity violated the restrictive covenants. The court concluded that the trustees would "suffer irreparable harm if the subdivision restrictions are allowed to be violated by the construction of this large commercial radio tower in that it will change the character of the neighborhood and would allow a commercial activity on the premises." The trial court permanently enjoined the Spavales from constructing the radio transmission tower. The standard of review in a court-tried action in equity is well established. The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo.App. 1991). A judgment involving the construction or enforcement of restrictive covenants is accorded the deference granted to other court-tried actions. *Speedie Food Mart, Inc.*, 809 S.W.2d at 129.

Appellants have raised two issues on appeal. They first challenge the injunction as overbroad and, second, they attack the trial court's ruling that appellants undertook the tower's construction despite knowledge of the trustees' objections. We address each in turn.

▆ At the outset, we observe that restrictions upon the free use of land are not favorites of the law. *Speedie Food Mart, Inc.*, 809 S.W.2d at 129. They are, therefore, narrowly construed and are not extended to include anything not clearly expressed within the document. *Id.* Doubts regarding application of a restriction are resolved in favor of the free use of land. *Id.* at 129–30. This principle, however, should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction. *Id.* at 130. Restrictive covenants are intended to preserve the aesthetic and residential nature of the subdivision. *Maull v. Community Living for the Handicapped, Inc.*, 813 S.W.2d 90, 92 (Mo.App.1991). Finally, proponents of the application of a restriction bear the burden of proving the extent and application of the restriction. *Speedie Food Mart, Inc.*, 809 S.W.2d at 130.

▆ The crux of appellants' first point is their argument that the trial court erred in enjoining use of the radio tower not just for commercial purposes, but for any purpose. The language of the restrictive covenants that "[n]o lot shall be used for other than residential purposes" clearly prohibits the tower's construction for commercial activities. Appellants concede that the restrictive covenants do prohibit commercial uses within the residential subdivision.

Whether any and all use of a 120 feet radio tower is prohibited by the restrictive covenants is not so clear. Appellants vigorously assert that the restrictive covenants do not preclude the tower's construction for their ham radio use, a noncommercial private use. Trustees emphasize the evidence clearly supported the trial court's conclusion that appellants intended the radio tower for commercial activities. They intimate that appellants' "private use" argument is amply refuted by evidence of intended commercial usage.

The situation is complicated by the reality that after the tower is built, ostensibly for private ham radio use only, it will be suited for commercial use as well. The only differences would arise from the type and frequency of air wave transmission. The impact on the subdivision resulting from increased air traffic use appears nominal based on the record before us. Nevertheless, we need not venture into the thorny area presented by the private/commercial use debate. We are satisfied that other objections raised by the trustees provide a sufficient basis to support the trial court's grant of the injunction.

Trustees have also responded that the injunction was properly granted because appellants failed to seek or obtain approval from the trustees to construct the radio transmission tower. Trustees cite paragraph one of the subdivision restrictions as authority for their position that the trustees' permission was a prerequisite for the tower's construction. Presumably the language in paragraph one upon which trustees rely is the phrase *"[e]xcept where specifically approved by the trustees, no building shall be erected, altered, placed or permitted to remain on any lot"*. (Emphasis ours). Trustees construe the word "building" as encompassing a radio tower.

In its broad meaning, the word "building" refers merely to that which is constructed. *Thomas v. Depaoli*, 778 S.W.2d 745, 747 (Mo.App.1989). In its narrow sense, "building" means a structure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like which encloses a space within its walls and is usually, but not necessarily, covered with a roof. *Id.* In *Thomas*, the Southern District held that a fence which would defeat the intent and purposes of a set-back restriction was a "building", even though a strict construction of the word might lead to an opposite result. *Id.* at 749.[1]

Our research has disclosed no Missouri authority for the proposition that "building" encompasses a radio tower.[2] Other jurisdictions have ruled or upheld determinations that radio or television towers were "structures" or "objectionable structures" within the meaning of these terms as used in restrictive covenants applicable to the residential property of the towers' owners. *See e.g. La Vielle v. Seay*, 412 S.W.2d 587, 592 (Ky.1966) (64–feet television reception and ham radio transmission tower is a "structure" for the purposes of restrictive covenant governing construction of a building, wall, fence "or other structure"); *Black Horse Run Property Owners Association—Raleigh, Inc. v. Kaleel*, 88 N.C.App. 83, 362 S.E.2d 619, 622 (1987) (Three radio towers, each at least 100 feet tall, were "structures" within meaning of restrictive covenant requiring subdivision approval prior to construction of any "structure or fence or wall"); *Parker v. Hough*, 420 Pa. 7, 215 A.2d 667, 670–71 (1966) (50–feet radio tower is a "structure" for the purposes of deed restriction prohibiting structures other than single-family dwellings, garages and specified accessory structures); and *Mitchell v. Gaulding*, 483 S.W.2d 41, 43 (Tex.Civ.App. 1972) (125–feet radio tower is a "structure" for purposes of restrictive covenant prohibiting all structures other than single-family residences, private garages and other outbuildings necessary for single-family use). Although the words "structure" and "building" are not synonymous, they frequently occur in tandem in restrictive covenants and are often used interchangeably. Thus, these cases from other jurisdictions while not directly on point, lend credence to the proposition that the word "building", like "structures", encompasses radio towers. Also helpful is Webster's Third New International Dictionary (1981) which defines "tower" as follows:

a building or structure designed primarily for elevation that is higher than its diameter and high relative to its surroundings, that may stand apart (as a round tower, campanile, or pagoda), be attached (as a church belfry) to a larger structure, or project above or out from a

---

1. Missouri courts have held that "building" does not include a roadway, *Vinyard v. St. Louis County*, 399 S.W.2d 99, 106 (Mo.1966); or a surface parking lot, *Dierberg v. Wills*, 700 S.W.2d 461 (Mo.App.1985); but does include a storage shed, *Simcox v. Obertz*, 791 S.W.2d 440, 443 (Mo.App.1990); and a fence, *Thomas v. Depaoli*, 778 S.W.2d at 749. *In Sherwood Estates Homes Association, Inc. v. McConnell*, 714 S.W.2d 848, 851 (Mo.App.1986), a concrete dog pen was held to be a "structure."

2. Helpful annotations on this issue include the following: *Annot.*, "What Constitutes a 'Building' Within Restrictive Covenant", 18 A.L.R.3d 850 (1968); *Annot.*, "What Constitutes a 'Structure' Within Restrictive Covenant", 75 A.L.R.3d 1095 (1977); and *Annot.*, "Radio or Television Aerials, Antennas, Towers, or Satellite Dishes or Discs as Within Terms of Covenant Restricting Use, Erection, or Maintenance of such Structures upon Residential Property," 76 A.L.R.4th 498 (1990).

wall, and that may be of skeleton framework (as an observation or transmission tower).

Keeping in mind the broad construction that the Southern District gave to the word "building" in *Thomas* and other jurisdictions' determination that radio towers are "structures", as well as the definition of "tower" in its ordinary sense as "a building or structure", we are persuaded that "building" as used in the restrictive covenants of the Twin River Estate Subdivision includes radio towers. We hold that paragraph one of the restrictive covenants required the trustees' prior approval before construction or erection of the radio tower for private use.

Appellants' second point focuses on the trial court's finding that Frank Spavale had expended money on the radio tower and undertook its construction despite his knowledge of the trustees' objections to the tower. The trial court then specifically overruled consideration of appellants' affirmative defenses. Appellants argue the court erred in overlooking their affirmative defenses of laches, waiver and abandonment, and the doctrine of relative convenience or comparative injury.

■ Appellants contend that the equitable defense doctrine of laches applies here because the trustees' negligence lulled appellants into believing their radio tower construction was not violative of the restrictive covenants, thus making it inequitable for trustees to prevail. The gist of appellants' argument turns on the testimony of trustee Donna Etela, a neighbor of Frank Spavale. They emphasize her testimony that she voiced concern to him about the tower's location but not about his right to build it. They conclude that it was only on October 31, 1989, *after* the tower base had been completed and money expended that Donna Etela objected to the use of the tower, followed by the heated trustee meeting on November 5, 1989. Substantial evidence supports the trial court's determination, despite appellants' characterization of trustee Donna Etela's testimony. Spavale believed no prior approval of the trustees was required, so the trustees had no direct knowledge of Spavale's ultimate plans until actual construction of the tower began.

■ Without elaborating, appellants also assert waiver and abandonment as well as the doctrine of relative convenience or comparative injury were proper affirmative defenses. The Spavales apparently predicate the assertion of their defenses of waiver and abandonment upon evidence that another resident of the subdivision had also constructed a ham radio tower, about seventeen inches wide and forty-five feet tall. Although the trial court permitted the Spavales to pursue the issue of abandonment and unclean hands during the evidentiary hearing, the record is unclear whether the owner of this smaller tower had obtained trustee permission for its construction. Trial testimony did establish that the owner had obtained subdivision approval by going door-to-door to his neighbors and that a trustee believed the small tower conformed to the neighborhood standards. Thus, the mere existence of the smaller tower does not support Spavales' defense of abandonment because the evidence does not establish any absence of trustee approval of the smaller tower.

■ The defense of relative convenience or comparative injury carries little force. Deposition testimony of Frank Spavale reflected his determination to go forward with the tower, despite his awareness of trustee disapproval and of the mixed response of his neighbors to its construction. We discern no error in the trial court's decision to discount the Spavales' affirmative defenses. Appellants' second point is denied.

The judgment is affirmed in all respects.

PUDLOWSKI, P.J., and CRIST, J., concur.