442 So.2d 576 (1983)
Thomas L. FAUST and Donna M. Faust
v.
Loel G. WHITE, White Investments, Inc., Whitmar Acres, Inc., A Division of White Investments, Inc., Mid-Acres, Inc., Richard W. Smith and John L. Ashcraft.
No. 83 CA 0125.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*577 T.J. Seale, Hammond, for plaintiff-appellee.
Iddo Pittman, Jr., Hammond, for defendant-appellant.
Samuel A. Bacot, Baton Rouge, for Richard W. Smith, et al.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Defendants appeal the trial court's declaratory judgment that certain amendments to building restrictions were null and void.
The only issue is whether an amendment can be made prior to the end of the term contained in the restrictions, with less than the unanimous consent of the property owners.
We affirm.
Plaintiffs purchased a lot in Section C of Whitmar Acres Subdivision in 1979. Building restrictions by White Investments, Inc. which covered Section C were recorded in August of 1977 and provided in part as follows:
B.1 Term
These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five (25) years, from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument in writing signed by a majority of the then owners of the lots has been recorded agreeing to change said covenants in whole or in part.
In July of 1981 and March of 1982, purported amendments to the restrictions were filed which were signed by a majority of the owners of Section C, but not by the plaintiffs.[1] One of the amendments changed some of the single family lots to multi-family lots.
Plaintiffs filed suit against Loel G. White, White Investments, Inc., Whitmar Acres, Inc., Mid-Acres, Inc., Richard Smith and John Ashcraft[2] seeking to enjoin the *578 construction within Section C, of multi-family dwellings or commercial buildings and requesting a declaratory judgment that amendments to the subdivision restrictions made in 1981 and 1982 were null and void.
The trial judge, with written reasons, declared that the amendments were null and void and that the original restrictions were to be given full effect until they were amended by unanimous consent of all of the landowners in Section "C" or they terminated under the provisions of article B.1, contained in the restrictions.
Defendants argue that amendments to the restrictions were valid. They interpret article B.1 as providing that the majority of the owners of the lots could at any time agree and execute an amendment to the restrictions.
In suits in which the scope of building restrictions is at issue, the court must seek the intention of the party encumbering the property. Consideration must be given to the entire context of the instrument rather than to a single phrase or clause. Those acquiring the property in the restricted area are entitled to the presumption that the restrictions will be fairly and faithfully complied with. Salerno v. DeLucca, 211 La. 659, 30 So.2d 678 (1947); Mitchell v. Killins, 408 So.2d 969 (La.App. 2nd Cir.1982).
We find the terminology of article B.1 to be clear and unambiguous. No change by a majority of the landowners of Section C can be made until an initial twenty-five year period has passed.
While the law favors contractual interpretation according to the true intent of the parties, that intent is to be determined by the words of the contract, when they are clear, explicit and lead to no absurd consequences. La.C.C. art. 1945.[3] Article B.1 follows the idea of La.C.C. art. 780[4] in setting a time period during which no change can be made. We find no absurd consequences. Robinson v. Morris, 272 So.2d 444 (La.App. 2nd Cir.1973).
The argument that previous amendments have been made to the restrictions by only a majority is relevant only to determine whether abandonment of article B.1 has occurred under La.C.C. art. 782.[5] Generally, insubstantial, technical or infrequent violations will be given little effect and the property owner against whom abandonment is asserted must have known of the alleged violations or have had a duty to know. Also, there is no abandonment of subdivision restrictions unless violations *579 have been such that there has been a subversion of the original scheme of the subdividers, resulting in a substantial change in the intended nature of the subdivision. Schwab v. Kelton, 405 So.2d 1239 (La.App. 1st Cir.), writ denied, 407 So.2d 749 (La. 1981); East Parker Properties, Inc. v. Pelican Realty Co., 335 So.2d 466 (La.App. 1st Cir.), writ refused, 338 So.2d 699 (La.1976). We find no abandonment or waiver of article B.1.
For these reasons, the judgment of the trial court is affirmed with costs assessed to the defendant.
AFFIRMED.
NOTES
[1] The owners of Section C were Whitmar Acres, Inc., White Investments, Inc., and three individual lot owners, including the plaintiffs.
[2] Loel White was sued individually and as an officer of Whitmar Acres, Inc., White Investment, Inc., and Mid-Acres, Inc. Whitmar Acres, Inc. was the original corporation set up for the development of the subdivision. Mid-Acres was set up for the development of Section B of the subdivision and was later absorbed by Whitmar Acres, Inc. White Investments, Inc. was set up for the development of Section C. Defendants, Richard Smith and John Ashcraft, purchased ten lots from White Investments, Inc. in March, 1982, which were converted by the March, 1982 amendment from single family residences.
[3] La.C.C. art. 1945:

Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.
[4] La.C.C. art. 780:

Building restrictions terminate as provided in the act that establishes them. In the absence of such provision, owners representing more than one-half of the land area, excluding streets and their rights-of-way, affected by the restrictions may amend or terminate by agreement, for the whole or a part of the restricted area, building restrictions that have been in effect for at least fifteen years.
[5] La.C.C. art. 782:

Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only.