Kenneth W. KAUFFMAN, et ux., Respondents,

v.

Douglas W. ROLING, et al., Appellants.

No. WD 46865.

Missouri Court of Appeals, Western District.

April 27, 1993.

Clifford Christy Barton, Jefferson City, for appellants.

Duane Edward Schreimann, Jefferson City, for respondents.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

FENNER, Presiding Judge.

Appellants, Douglas W. Roling and Mary J. Roling, Jack E. Young, Jr. and Janice L. Young, Larry Keith West and Karen A. West, Kevin L. Wisch and Karen M. Wisch, and Archie F. McDaniel and Carolyn S. McDaniel,[1] appeal the declaratory judgment of the Cole County Circuit Court interpreting certain provisions of restrictive covenants covering the real estate subdivision called Sleepy Hollow Estates (Sleepy Hollow), located in Jefferson City, Missouri. Appellants all had acquired property in the Sleepy Hollow subdivision after the subdivision plat and restrictions were recorded. Respondents, Kenneth W. Kauffman and Juanita L. Kauffman, husband and wife, are owners and developers of Sleepy Hollow.

The facts leading up to this appeal include the following: On October 28, 1988, the Kauffmans filed the Sleepy Hollow subdivision plat with the recorder of deeds in Cole County. On this same day, before they sold any lots in Sleepy Hollow, the Kauffmans recorded a set of restrictive convenants (hereinafter referred to as the "Original Restrictions") governing the development and use of the property in the new subdivision. The Kauffmans owned all of the lots in the subdivision at the time the plat was recorded.

Paragraph III–A of the Original Restrictions governed the duration and modification of the restrictive covenants. This paragraph, entitled "TERM," provides as follows:

These covenants are to run with the land and shall be binding on all parties and persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, except as otherwise provided herein, after which time said covenants shall be automatically extended for successive periods of twenty-five (25) years unless an instrument signed by two-thirds of the then owners of the lots has been recorded,

---

**1.** Appellants are listed here as husband and wife couples. Appellants Archie and Carolyn McDaniel failed to appear at the March 13, 1992 proceeding where arguments were heard on the respondents' Motion for Judgment on the Pleadings.

agreeing to change said covenants in whole or in part as provided for herein. Paragraph III–E provided further that "[e]xceptions to restrictions may be allowed at developer's discretion and approval."

On September 26, 1991, when all of the lots in the subdivision were owned by five couples, respondents and appellants Roling, Young, West and Wisch,[2] respondents recorded a written instrument amending the subdivision restrictions pursuant to paragraph III–A of the Original Restrictions (hereinafter referred to as "Respondents' Amendments"). This instrument was signed only by respondents. The Respondents' Amendments, among other things, reduced the minimum size of the dwellings.

On October 31st and November 1st of 1991, appellants, Young, West, Wisch and Roling, who together constituted two-thirds of the owners of the lots in the subdivision, recorded instruments which amended and/or restated the Original Restrictions and Respondents' Amendments (hereinafter referred to as "Appellants' Amendments"). In the Appellants' Amendments, appellants, among other things, sought to revoke Respondents' Amendments in their entirety and sought to reinstate the minimum size of the dwellings provided for in the Original Restrictions as well as other provisions in the Original Restrictions.

To resolve the conflict between competing sets of restrictive covenants on file with the local recorder of deeds, respondents brought a declaratory judgment action on November 8, 1991 seeking a determination that their amendments were valid and Appellants' Amendments were void or, alternatively, that the Original Restrictions could not be amended sooner than 25 years after their adoption. Appellants subsequently counterclaimed, on December 11, 1991, for a declaration that their own amendments were valid and Respondents' Amendments were void or, alternatively,

that the Original Restrictions could not be amended within 25 years after their recording absent the unanimous written consent of all current owners of property in the subdivision.

On February 27, 1992, respondents filed a Motion for Judgment on the Pleadings or, alternatively, a Motion for Summary Judgment. In this motion, respondents sought a declaration from the court as to which set of restrictive covenants are presently in effect as to the subject property and a declaration interpreting certain provisions of the covenants.[3] Appellants filed their response on March 10, 1992, praying for judgment in their favor.

The trial court entered its judgment in respondents' favor on June 1, 1992, finding that: (1) Paragraph III–A of the Original Restrictions means that the restrictions may be amended if the owners of two-thirds of the lots in the subdivision (i.e., respondents) execute and record a document amending the restrictions; (2) the Original Restrictions could be amended at any time by the owners of at least two-thirds of the lots in the subdivision; (3) the Respondents' Amendments were valid since respondents at that time owned more than two-thirds of the lots in the subdivision; (4) appellants' attempts to amend the Original Restrictions or rescind the Respondents' Amendments were not valid because appellants owned less than two-thirds of the lots in the subdivision; and (5) there is no just reason to delay finality of the court's order and, thus, the order is final and appealable.

On June 15, 1992, appellants Roling, Young and Wisch filed a Motion for Reconsideration alleging that the court erred in finding that the Original Restrictions could be amended sooner than 25 years after their adoption without the unanimous consent of all the then current owners of property in the subdivision. Appellants further alleged that the court erred in concluding

2. Respondents owned 65 of the 69 lots in the subdivision. The other four couples owned the remaining four lots. The McDaniels did not become owners of a lot in the subdivision until October 18, 1991, when a warranty deed was recorded.

3. In this motion, respondents also prayed for a specific finding that there was no just reason to delay finality of the court's ruling on the declaratory judgment issues so that the ruling would be final and immediately appealable per Rule 74.01(b).

that respondents, as owners of two-thirds of the lots (as opposed to two-thirds of the owners of the lots), could amend the Original Restrictions. Appellants submitted that the court's June 1, 1992 judgment misapplied Missouri law and was therefore in error. Appellants' motion was overruled and this appeal followed.

Appellants' first point on appeal is dispositive. In its first point, appellants argue that the trial court erred in finding that the Original Restrictions could be amended within 25 years of the date of their recording by written agreement of the owners of at least two-thirds of the lots in the subdivision. Appellants contend that the plain and unambiguous language of Paragraph III–A of the Original Restrictions declares that the restrictions shall be binding for 25 years from the date of their recording and may be amended only after the passage of that period of time. The Original Restrictions could only be amended within the initial 25-year period if the unanimous written consent of all of the owners of the subdivision lots were obtained. The Respondents' Amendments were void, appellants argue, because they were signed only by respondents and not by the eight appellants who then owned lots in the subdivision.

A restrictive covenant is a private contractual obligation. *Brentmoor Place Residents Ass'n v. Warren*, 816 S.W.2d 7, 11 (Mo.App.1991). The rules governing construction of restrictive covenants on realty are generally the same as those applicable to any covenant or contract. *Big River Hills Ass'n v. Altmann*, 747 S.W.2d 738, 742 (Mo.App.1988). Restrictive covenants are examined in the context of the entire instrument and not in just a single clause. *Simcox v. Obertz*, 791 S.W.2d 440, 442 (Mo.App.1990).

If the meaning of terms in a restrictive covenant is questioned, absent any indication that a "special meaning" for a particular word is intended, this court gives the language used its plain, ordinary, and usual meaning. *Id.* If the meaning of a covenant is clear and unambiguous on its face, the covenant is not open to judicial construction. *Dierberg v. Wills*, 700 S.W.2d 461, 468 (Mo.App.1985). The test in determining whether ambiguity exists is whether the disputed language, in the context of the entire instrument, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person. *Speedie Food Mart, Inc. v. Taylor*, 809 S.W.2d 126, 129 (Mo.App.1991). A contract, or covenant, is not rendered ambiguous by the fact that the parties differ as to the proper construction to be given it. *Id.*

Doubts as to the application of restrictive covenants are resolved in favor of the free use of land, but this principle should never be applied in a manner that would defeat the plain and obvious purpose and intent of the restriction. *Id.* at 129–30. Those who purchase lots in a subdivision subject to restrictive covenants do so upon the expectation of a benefit as well as the obvious burden or obligation of compliance. *Lakeshore Estates Recreational Area, Inc. v. Turner*, 481 S.W.2d 572, 575 (Mo. App.1972); *see also Faust v. White*, 442 So.2d 576, 578 (La.App.1983) (stating that those acquiring property in subdivision subject to restrictive covenants are entitled to presumption that restrictions will be fairly and faithfully complied with).

The court in *Steve Vogli & Co. v. Lane*, 405 S.W.2d 885, 888 (Mo.1966), stated, "[r]estrictive covenants running with the land, while in effect pursuant to the terms of the instrument creating them, may be extinguished, modified or changed *by mutual agreement between all of those subject to the restrictions and all of those entitled to enforce them ...*" (emphasis added). In other words, absent a contractual provision to the contrary, restrictive covenants can be amended at any time where there is unanimous consent of all of the owners of the lots in a subdivision.

While Missouri case law on the precise issue before us is lacking, other jurisdictions have squarely addressed the issue; that is, whether an amendment can be made prior to the end of the term contained in the restrictive covenant, with less than

the unanimous consent of the property owners, pursuant to a provision akin to Paragraph III–A. A dispositive example is the court's holding in *Johnson v. Howells,* 682 P.2d 504 (Colo.App.1984).[4]

In *Johnson,* the provision in the restrictive covenant, which was nearly identical to Paragraph III–A in the instant case, read as follows:

> Change in Covenants: These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty (20) years from the date hereof after which time said covenants shall be automatically extended for a successive period of 20 years unless an instrument signed by sixty percent of the then owners of the property has been recorded, agreeing to change said covenants in whole or in part.

*Id.* at 505. The *Johnson* court held that, barring unanimous agreement among the owners to rescind or change the restrictive covenants, the covenants may not be amended within the initial twenty-year period. *Id.* at 505. Its rationale was as follows:

> We consider the crucial phrase to be "after which time." The plain meaning of the paragraph in question is that the covenants will be binding for twenty years, after which time they are automatically extended unless sixty percent of the property owners agree to change them and record an instrument to that effect. Two courts have interpreted nearly identical covenants in this way. *White v. Lewis,* 253 Ark. 476, 487 S.W.2d 615 (1972); *Robinson v. Morris,* 272 So.2d 444 (La.App.1973). To interpret the paragraph in question as the trial court did [*i.e.,* by holding that the cove-

nants could be amended at any time by sixty percent of the owners of the property] would be to render meaningless the reference therein to a twenty year period. If the owners had intended that the covenants could be amended at any time by sixty percent of the owners, they would not have needed to include any reference to a twenty year period.

▪ This rationale is directly applicable to the case at bar. Paragraph III–A states:

> These covenants are to run with the land and shall be binding on all parties and persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, *except as otherwise provided herein,* after which time said covenants shall be automatically extended for successive periods of twenty-five (25) years unless an instrument signed by two-thirds of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part *as provided for herein* (emphasis added).

Respondents argue that the emphasized phrases in Paragraph III–A constitute a significant distinction from the provisions in the other cases cited herein. However, we find the addition of the emphasized phrases, "except as otherwise provided herein" and "as provided for herein," to be insignificant. There is no other provision in the Original Restrictions that allows for amendment by less than unanimous consent within the initial twenty-five year period.

Respondents also argue that *Reinecke v. Kleinheider,* 804 S.W.2d 838 (Mo.App. 1991), is more analogous to the instant case than the cases from other jurisdictions cited herein. The court in *Reinecke* ultimate-

---

**4.** The following are other examples of cases where the language in the restrictive covenants was strikingly similar to the language in Paragraph III–A: *White v. Lewis,* 253 Ark. 476, 487 S.W.2d 615 (1972) (finding restriction unambiguous and holding that restrictive covenants could not be amended prior to end of 25–year period by an agreement signed by more than one-half of property owners in subdivision); *Robinson v. Morris,* 272 So.2d 444 (La.App.1973) (stating that terminology of amendatory clause

of restrictions is clear and unambiguous and holding that majority of the then owners of lots in subdivision may not amend restrictions until primary term of thirty-five years has elapsed); *Faust v. White,* 442 So.2d 576 (La.App.1983) (finding terminology of amendatory clause of restrictions to be clear and unambiguous and holding that no change by a majority of landowners can be made until initial twenty-five year period has passed).

ly held that the restrictions could be amended before expiration of the initial 15–year period provided for in the covenant, by vote of two-thirds of the lot owners. *Id.* at 842.

*Reinecke* is distinguishable from the case at bar. In *Reinecke,* the court disagreed with the trial court's conclusion that, because the original restrictions provided they were to be binding for fifteen years, the additional provision authorizing amendment by a vote of two-thirds of the then owners "at any time" was not to be given effect for fifteen years. *Id.* at 841. The *Reinecke* court found that a grantor can reserve the right to amend restrictions without the grantee's consent. *Id.* at 841.

The distinguishable factor in *Reinecke* is the language "at any time" which was used in the *Reinecke* provision but not in the provision in the case at bar. The plain meaning of "at any time" is that the grantor can amend the restrictions at any time, *i.e.,* even before the expiration of the initial fifteen year period. The fact that this language was not used in Paragraph III–A signifies that the grantors could not amend before the expiration of the initial time period unless by unanimous consent of all the owners. Thus, *Reinecke* is not controlling here.

■■■ Respondents further argue that Paragraph III–E gives them authority to amend the Original Restrictions at any time, within their discretion. Paragraph III–E states, "[e]xceptions to restrictions may be allowed at developer's discretion and approval." The plain language of this provision, however, does not give respondents the authority to *amend* restrictions, but merely to grant *exceptions* to restrictions where necessary. An exception, by definition, means separating out from the general rule or provision without actually changing the general rule or provision. An amendment, by contrast, means a change to a rule or provision. Thus, we find that Paragraph III–E does not give respondents the authority to amend the Original Restrictions at any time.

The plain and unambiguous meaning of Paragraph III–A is that the covenants will be binding for an initial period of twenty-five years from the date of recording; that is, until October 28, 2013. This is consistent with the purpose and intent of the restrictive covenants, and enables grantees to rely on the restrictions for a substantial period of time without the concern that they could be subject to a change at any moment which, as just one example, could result in diminished property values.

The Respondents' Amendments are null and void. The Original Restrictions shall remain in effect until at least October 28, 2013 unless they are amended by unanimous consent of all of the owners in Sleepy Hollow subdivision.

Under the standard of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), we find that the trial court erroneously declared and applied the law. Accordingly, the judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

All concur.