**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-051

Filing Date: February 8, 2013

Docket Nos. 30,944 and 31,590

ESTATES AT DESERT RIDGE TRAILS
HOMEOWNERS' ASSOCIATION, a New
Mexico non-profit corporation,

       Plaintiff-Appellant,

v.

DAVID VAZQUEZ,

       Defendant-Appellee,

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
C. Shannon Bacon, District Judge

Vance, Chavez & Associates, LLC
James A. Chavez
Claud E. Vance
Albuquerque, NM

for Appellant

Espinosa & Associates, P.C.
Richard D. Barish
Leonard G. Espinosa
Albuquerque, NM

for Appellee

**OPINION**

**FRY, Judge.**

**{1}**    In this opinion we consider two lawsuits filed by the Estates at Desert Ridge Trails Homeowners' Association (HOA) seeking to enjoin David Vasquez, Defendant, from renting his home on a short-term basis. The district court denied the HOA's request for injunctive

1

relief in both cases, and the HOA now appeals those orders. In its first appeal, the HOA primarily argues that the short-term rentals violate the limiting language in the restrictive covenants that lots be used for "single-family residential purposes" and the HOA's rules and regulations barring certain business activities within the subdivision and rentals for less than thirty days. Between the first lawsuit and the second lawsuit, the HOA amended the restrictive covenants. In its second appeal, the HOA primarily argues that the short-term rentals violate the amended restrictive covenants barring rentals for less than ninety days. For efficiency, we address both appeals in this opinion and affirm the district court.

**BACKGROUND**

**{2}** Defendant purchased a lot in the Estates at Desert Ridge Trails subdivision (Subdivision) in 2006 and constructed a home on the lot. All lots purchased in the gated Subdivision were subject to the Declaration of Covenants, Conditions, and Restrictions recorded in 2004 (CCRs). In addition to the CCRs, rules and regulations were promulgated in 2007 supplementing the initial rules and regulations recorded with the CCRs. The Subdivision's HOA was subsequently formed and charged with enforcing the CCRs and the Subdivision's rules and regulations.

**The HOA's First Lawsuit**

**{3}** In June 2010, Defendant began renting his home on a short-term basis. Defendant's internet advertisement of the home listed a minimum rental term of three nights and did not provide for individual room rentals. Defendant testified at the hearing that he rented the home to families and that he had never rented to more than eight people. Defendant also testified that he charged renters a lodger's tax but did not carry a separate business license for his rental activities related to the home.

**{4}** In September 2010, the HOA's counsel sent Defendant a letter notifying him that the short-term rentals of his home violated the CCRs and the Subdivision's rules and regulations. The letter requested that Defendant cease and desist from any further short-term rental activity. When Defendant did not stop renting the home, the HOA sought and was granted an ex parte temporary restraining order and filed a verified complaint for permanent injunctive relief barring Defendant's short-term rentals. Following two hearings and supplemental briefing by the parties, the district court concluded that the CCRs did not prohibit Defendant from renting his home on a short-term basis and that the HOA rules and regulations constituted an unreasonable interference with Defendant's use and enjoyment of his property and were therefore unenforceable. The district court issued an order dissolving the temporary restraining order and denying the HOA's request for injunctive relief. The HOA appealed the district court's order.

**The HOA's Second Lawsuit**

**{5}** On November 11, 2010, the HOA board of directors resolved to amend the CCRs to

prohibit rentals for less than ninety days. Notice was sent to the members of the HOA that a vote was to be held on the proposed amendments to the CCRs at the annual meeting taking place on December 6, 2010. At the December meeting, fourteen votes were cast in person and thirty-two by proxy in favor of amending the CCRs. Realizing that it did not have what it believed to be the two-thirds vote needed to amend the CCRs, the HOA called a special meeting for January 11, 2011, to again vote on the proposed amendments. Forty-nine votes were cast in favor of the proposed amendments at the January meeting. The thirty-two affirmative proxy votes and the fourteen votes cast in person from the December meeting were also included in the final vote tally, bringing the vote total to ninety-five in favor and four against. The HOA considered this vote sufficient to amend and record the Supplemental CCRs.

{6}     The Supplemental CCRs were recorded on January 25, 2011. On March 3, 2011, the HOA filed suit against Defendant for a second time. The HOA's complaint sought to enjoin Defendant from engaging in short-term rental activity pursuant to the Supplemental CCRs and alleged various other violations stemming from separate provisions of the Supplemental CCRs and HOA rules and regulations. The district court concluded, however, that a valid amendment to the CCRs required unanimous agreement of the lot owners, which the HOA did not have. Therefore, the district court denied the HOA's claims, finding that all of the alleged violations fell under the Supplemental CCRs, which it concluded were void. The HOA appealed, again.

**DISCUSSION**

**I.      The First Lawsuit**

**A.      The District Court Did Not Abuse Its Discretion in Declining to Consider Violations of CCR Provisions Not Pleaded in the Complaint**

{7}     We begin by addressing the issues raised by the HOA on appeal regarding alleged violations of CCRs and zoning code provisions that were not pleaded in the HOA's complaint or the motion for a temporary restraining order (TRO) in the first lawsuit. The HOA's complaint and motion for a TRO specifically alleged violations of Article VI, Section 21 of the CCRs and Rules 2.1 and 2.2 of the HOA rules and regulations (Rules 2.1 and 2.2). Neither the complaint nor the motion for a TRO specifically alleged violations of Article VI, Sections 29 (nuisances), 45 (temporary uses), or 49 (zoning; development). In addition, Defendant testified that the HOA notified him that it believed he had violated only Article VI, Section 21 of the CCRs and Rules 2.1 and 2.2 of the rules and regulations. Immediately prior to the hearing, the HOA apparently alerted Defendant that it intended to argue that Defendant violated additional CCR sections. Defendant argued prior to the hearing and during his closing argument that evidence and arguments on alleged violations of extraneous provisions of the CCRs were beyond the pleadings and should not be considered. The district court agreed and it specifically limited its ruling to the violations of Section 21 of the CCRs and Rules 2.1 and 2.2 of the HOA rules and regulations alleged

3

in the complaint.

**{8}** On appeal, the HOA argues that the district court's refusal to rule on these issues was an abuse of discretion because the district court's order was inconsistent with the record. The HOA claims that its general allegation in the complaint that "Defendant has violated the covenants contained in the Declaration and the Rule[s] and Regulations of the Subdivision" put Defendant on notice that his conduct not only violated the provisions explicitly alleged in the complaint, but also any other provision the HOA conceivably considered violated by Defendant's conduct by the time of the hearing. In other words, the HOA contends that violations of Sections 29, 45, and 49 were alleged in the complaint under its general allegation regarding Defendant's violation of the CCRs and that the court abused its discretion in not considering the testimony and briefing on these alleged violations.

**{9}** We are not persuaded. The complaint and the motion for a TRO specified only Section 21 of the CCRs and Rules 2.1 and 2.2 of the rules and regulations. Therefore, Defendant could reasonably understand the HOA's claims to be limited to those sections. To the extent that the HOA's eleventh-hour attempt to add violations of other sections of the CCRs and of the rules and regulations can be construed as an attempt to amend its complaint, we review the district court's denial of that attempt for abuse of discretion. *See Roark v. Farmers Group, Inc.*, 2007-NMCA-074, ¶ 14, 142 N.M. 59, 162 P.3d 896. Here, Defendant prepared for the hearing on the basis of the complaint and the motion for a TRO, and the HOA did not alert either Defendant or the district court that it intended to assert claims beyond the specific provisions cited in the complaint and the motion until immediately prior to the hearing. Consequently, the district court could have reasonably determined that permitting the purported amendment would be prejudicial to Defendant, and it acted within its sound discretion in refusing to consider the HOA's additional claims.

**B.     Defendant's Short-Term Rentals Did Not Violate the Original CCRs**

**{10}** We now turn to the violations alleged in the HOA's complaint and motion for a TRO and begin with the HOA's contention that the CCRs prohibited Defendant's short-term rentals. The district court concluded that Article VI, Section 21 of the CCRs did not prohibit such use. Article VI, Section 21 states, in relevant part, "No Lot or any portion thereof shall be used except for single-family residential purposes." The HOA argues that use of the home as a short-term rental is inconsistent with the "single-family residential purposes" limitation on the lot because the short-term nature of the rentals makes them more akin to business or commercial uses such as a hotel or lodging house.

**{11}** Interpretation of language in a restrictive covenant is a question of law that we review de novo. *Heltman v. Catanach*, 2010-NMCA-016, ¶ 5, 148 N.M. 67, 229 P.3d 1239. In interpreting a restrictive covenant, we look to certain general rules of construction:

> First, when the language of a restrictive covenant is unclear or is subject to ambiguity, then the covenant will be resolved in favor of the free enjoyment

4

of the property and against the restriction. Second, restrictions on land use will not be read into covenants by implication lest the free alienability of property be frustrated. Third, restrictive covenants must be considered reasonably, though strictly, so that illogical, unnatural or strained construction will not be effected. [F]ourth, words in a restrictive covenant must be given their ordinary and intended meaning.

*Cain v. Powers*, 100 N.M. 184, 186, 668 P.2d 300, 302 (1983) (internal quotation marks and citations omitted).

**{12}** The HOA does not argue that rentals in general are prohibited by the covenants. Rather, the HOA's argument necessarily depends on drawing a distinction between short- and long-term rentals, which assumes that while the latter are a permissible residential use, the former, by the nature of their duration, are transformed into a business or commercial purpose. Because the language of the covenant does not specifically draw such a distinction, we turn to an examination of the term "single-family residential purposes" in light of case law both in New Mexico and in other jurisdictions that have interpreted similar restrictive covenants.

**{13}** "Residential use" or "residential purposes" language in a restrictive covenant, without further limiting language, has routinely been interpreted as intending a use of the property for "living purposes, or a dwelling, or a place of abode." *Lowden v. Bosley*, 909 A.2d 261, 267 (Md. 2006). Courts following this interpretation read into this term a prohibition on activities associated with a commercial or business purpose, regardless of whether the covenants at issue include such an express prohibition. *See Blevins v. Barry-Lawrence Cnty. Ass'n for Retarded Citizens*, 707 S.W.2d 407, 408 (Mo. 1986) (en banc) (stating that the plain and ordinary meaning of "residential purposes" is "one in which people reside or dwell, or which they make their homes, as distinguished from one which is used for commercial or business purposes" (internal quotation marks and citation omitted)); *Mullin v. Silvercreek Condo. Owner's Ass'n.*, 195 S.W.3d 484, 490 (Mo. Ct. App. 2006) (defining "residential purposes" as limiting the use of the owner's unit for the "purpose of residing or dwelling . . . as distinguished from using the realty for commercial or business purposes" (internal quotation marks and citation omitted); *see also Catawba Orchard Beach Ass'n. v. Basinger,* 685 N.E.2d 584, 589 (Ohio Ct. App. 1996) ("The words 'residence' or 'residential' in restrictive covenants are used in contradiction to the word 'business.' " (internal quotation marks and citation omitted)). Thus, resolution of this issue is just as much a question of whether short-term rentals constitute a business or commercial purpose as whether short-term rentals are, strictly speaking, a residential purpose.

**{14}** In *Mason Family Trust v. DeVaney*, this Court held that deed restrictions that limited use of the property to "dwelling purposes only" and specifically prohibited any use of the property for "business or commercial purposes" did not prohibit short-term rentals. 2009-NMCA-048, ¶¶ 1-3, 146 N.M. 199, 207 P.3d 1176. While we stated in *DeVaney* that the defendant's use of the property "may have constituted an economic endeavor," *id.* ¶ 10, we

5

concluded that his "rental of a house or abode for a short-term use as a shelter to live in [was] significantly different from using the property to conduct a business or commercial enterprise on the premises." *Id.* ¶ 14; *see id.* ¶ 15 ("Under our ruling . . . this commercial or business use restriction [does not] preclude the economic aspect of an owner's vacation home which is also partially used as a short-term rental for dwelling purposes."). We specifically limited *DeVaney*'s holding to the facts presented in that case, but we see no reason to depart from its reasoning here. We therefore conclude, as we did in *DeVaney*, that an economic benefit flowing to Defendant from the rental of his home, whether long- or short-term, does not by itself constitute an impermissible business or commercial activity under the "residential purposes" restrictive covenant. *See Lowden*, 909 A.2d at 267 ("While the owner may be receiving rental income, the use of the property is unquestionably 'residential.' The fact that the owner receives rental income is not, in any way, inconsistent with the property being used as a residence." (emphasis omitted)); *see also Pinehaven Planning Bd. v. Brooks*, 70 P.3d 664, 668 (Idaho 2003) ("Renting the property for residential purposes, whether short[-] or long-term, does not fit within [the covenant's] prohibitions . . . [and] renting this dwelling to people who use it for the purpose of eating, sleeping, and other residential purposes does not violate the prohibition on commercial and business activity as such terms are commonly understood.").

{15}    The HOA points us to a number of cases in which courts have held that residential use restrictions prohibit short-term rentals or temporary occupancy. Most of these cases dealt with "tourist" homes or bed and breakfast-type facilities in which the homeowners rented out individual bedrooms to transient occupiers. *See Fick v. Weedon*, 613 N.E.2d 362 (Ill. App. Ct. 1993); *Bruni v. Thacker*, 853 P.2d 307 (Or. Ct. App. 1993); *Carr v. Trivett*, 143 S.W.2d 900 (Tenn. Ct. App. 1940); *Deitrick v. Leadbetter,* 8 S.E.2d 276 (Va. 1940). However, this was not the case here where Defendant rented the entire home, and we do not find these cases persuasive. *See DeVaney*, 2009-NMCA-048, ¶ 14 (citing *Hill v. Cmty. of Damien of Molokai*, 1996-NMSC-008, ¶ 11, 121 N.M. 353, 911 P.2d 861, in distinguishing the short-term rental of the defendant's home from a "commercial [use]—*i.e.*, a boarding house that provides food and lodging only—or is institutional in character" (internal quotation marks omitted)).

{16}    The HOA further cites *Benard v. Humble*, in which the court held that short-term rentals of a home violated a deed restriction that stated, "No lot shall be used except for single-family residence purposes." 990 S.W.2d 929, 930, 931 (Tex. Ct. App. 1999) (internal quotation marks omitted). While we note the similarity between the restrictive covenant's language in *Humble* and the one currently before us, we find the reasoning used by the court in reaching its conclusion unpersuasive. In attempting to give meaning to the term "residence," the *Humble* court looked to both the Texas Family Code's requirements for establishing residency in order to file a divorce proceeding and cases interpreting "residence" for purposes of the Texas Election Code in ruling that the restrictive covenant prohibited rentals for less than ninety days. *Id.* at 931-32. We do not agree, however, that the policies behind statutory residency requirements for voting or to establish jurisdiction for divorce proceedings easily translate to the interpretation of restrictive covenants.

6

Furthermore, adopting a similar analysis to that in *Humble* would require us to disregard our express directive in *DeVaney* that "[i]n the context of a residential subdivision, we interpret a dwelling purpose to be use[d] as a house or abode, and once a proper use has been established, we do not attach any requirement of permanency or length of stay." 2009-NMCA-048, ¶ 12; *see Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997) (en banc) (stating that "'residence' can refer simply to a building used as a dwelling place, or it can refer to a place where one intends to live for a long time[.] The people who rent [the] defendants' beach house use it as a temporary home, and their purpose is to engage in activities commonly associated with a dwelling place.").

**{17}** Because we conclude that the "residential purposes" language of the covenant would not, by itself, preclude Defendant's short-term rentals, we now turn to the "single-family" limitation and the CCR provision at issue as a whole.

**{18}** In *Hill*, our Supreme Court construed the term "single family" in a restrictive covenant that stated, "No lot shall ever be used for any purpose other than single family residence purposes," as a limitation on the *use* of the property as opposed to only a limitation on the type of structure that could be constructed. 1996-NMSC-008, ¶¶ 3, 12-21 (emphasis, internal quotation marks and citation omitted). While the use of the home in *Hill* as a group home for individuals with terminal illnesses was significantly different from the use in the present case, we agree with the HOA that New Mexico courts interpret the term "single family," absent clear language in the restrictive covenant to the contrary, as having an independent significance apart from the physical design of the home. *Contra Sissel v. Smith*, 250 S.E.2d 463, 595, 596-97 (Ga. 1978) (holding that the defendant's use of her residence as a beauty parlor did not violate the "single family residence purposes only" restrictive covenant because the covenant "should be interpreted as a restriction upon the *type*s of buildings that can be constructed on the lots . . . and not as a limitation on the types of activities" (emphasis added) (internal quotation marks and citation omitted)).

**{19}** Because we must consider the use of Defendant's house, the HOA urges us to look not only to the definition of "family" used in *Hill* but also to various Albuquerque ordinances and zoning code provisions in order to conclude that Defendant's short-term rentals are in violation of this provision of the CCRs.[1] While ordinances and zoning code provisions could

---

[1]The HOA also encourages us to consider the distinction drawn between "residence" and "transient occupancy" in the New Mexico Uniform Owner-Resident Relations Act (the Act), NMSA 1978, §§ 47-8-1 to -52 (1975, as amended through 2007), in order to conclude that Defendant's short-term rentals violate the CCRs. Section 47-8-3(V). We disagree with the HOA that the Act is applicable to the case before us since no claims have been alleged under the Act. We note in passing, however, that the Act also includes a definition for "single family residence," seemingly a much closer match linguistically to the language before us but not cited by the HOA, as a "*structure* maintained and used as a single dwelling unit." Section 47-8-3(S) (emphasis added).

7

provide "persuasive evidence for a proper interpretation of [an] ambiguous term in the covenant," *Hill* 1996-NMSC-008, ¶ 15, we conclude that the HOA simply did not provide sufficient evidence at the hearing that Defendant was, in fact, violating the "single-family" limitation in the CCRs, no matter how strictly or broadly we interpret that term. Defendant, on the other hand, continuously maintained that his renters were families. For example, when being questioned by Plaintiff's counsel, Defendant repeatedly referred to his renters as families. Furthermore, when specifically asked by his own counsel whether he ever rented to more than one family, Defendant replied, "No sir, just one family." Presumably in rebuttal, the HOA introduced three surreptitiously taken photos of Defendant's renters, one taken over his backyard fence showing five middle-aged adults sitting by the pool, and Defendant's internet advertisement of the property, which does not ask potential renters whether they are related. Regardless of what the HOA intended these photos and the internet advertisement to prove, viewing the evidence and its inferences in support of the district court's ruling, we cannot hold that the HOA's evidence established that Defendant has violated the "single family" limitation.

**{20}** Finally, our general rules of construction for restrictive covenants compel the conclusion that Defendant's short-term rentals do not violate the restrictive covenant at issue. *See Cain*, 100 N.M. at 186, 668 P.2d at 302. As stated above, nothing in the plain language of the covenant draws a distinction between what the HOA views as permissible long-term rentals and prohibited short-term rentals. Essentially, the HOA asks us to read such a distinction into the covenant by implication, which we will not do. *See id.* (stating that "when the language of a restrictive covenant is unclear . . . the covenant will be resolved in favor of the free enjoyment of the property and against the restriction . . . [and] restrictions on land use will not be read into [the] covenants by implication lest the free alienability of property be frustrated"). In sum, we emphasize again what we said in *DeVaney*: If a restrictive covenant is to preclude short-term rentals it must be stated with sufficient specificity in the covenant. 2009-NMCA-048, ¶ 15.

## C.     The HOA's Rule Against Short Term Rentals is Void

**{21}** The HOA recorded initial rules and regulations with the CCRs in 2004. The initial rules and regulations contained design principles for the Subdivision and granted the HOA's board of directors the authority to adopt further rules and regulations to "govern the conduct of all persons occupying any part of the Subdivision." In 2007, the HOA promulgated a new set of rules and regulations (HOA Rules) pursuant to that grant of authority. Article II of the HOA Rules contain two provisions that the HOA argues prohibit Defendant's short-term rentals. As for Rule 2.1, which restricts business use of the property, we concluded above that Defendant's short-term rentals were not a business or commercial use and affirm the district court on that basis. Rule 2.2 states, "No [o]wner shall rent his house for less than a thirty (30) day term" and requires the homeowner to forward a copy of the written lease to the HOA. Relying on the Restatement (Third) of Property (Servitudes) § 6.7 (2000), and *Wilson v. Playa de Serrano*, 123 P.3d 1148 (Ariz. Ct. App. 2005), the district court concluded that any restriction on Defendant's use of the property needed to be contained in

8

the CCRs and, therefore, this HOA Rule could not be enforced against Defendant. For the following reasons, we affirm.

**{22}** The permissible scope of a homeowners' association's rule-making authority to govern use of individually owned property is a matter of first impression in New Mexico. After reviewing the cases and authorities relied upon by the parties, we agree with the approach articulated in the Restatement (Third) of Property (Servitudes) § 6.7. Under the Restatement, a homeowners' association has the "implied power to adopt reasonable rules to (a) govern the use of the common property, and (b) govern the use of individually owned property to protect the common property." *Id.* § 6.7(1)(a), (b). Furthermore, if the homeowners' association's declaration grants a general power to adopt rules, the homeowners' association may adopt "reasonable rules designed to . . . protect community members from unreasonable interference in the enjoyment of their individual lots or units and the common property caused by use of other individually owned lots or units." *Id.* § 6.7(2)(a). The comments to the Restatement note that this subsection is limited to the "prevention of nuisance-like activities" because homeowners have a reasonable expectation that they will be protected "from neighborhood nuisances by adoption of preventative rules." *Id.* § 6.7 cmt. b. Otherwise, unless there is "specific authorization" in the homeowners' association's declaration, a homeowners' association has no authority to "restrict the use or occupancy of, or behavior within, individually owned lots or units" beyond those rules permissible under subsections (1) and (2) of the Restatement. *Id.* § 6.7(3).

**{23}** Therefore, under a general grant of rule-making authority, the HOA's authority to restrict individually owned property pursuant to the HOA Rules was limited to protecting common property and individually owned lots from any unreasonable interference by another lot owner's use of his or her property. On this point, the HOA argues that rentals for a period of less than thirty days unreasonably interferes with fellow lot owners' enjoyment of their property because such rentals deprive them of "their right to a limited access neighborhood and devalu[es] their investment." Stated another away, the HOA asks us to conclude that short-term rentals constitute a nuisance activity that Rule 2.2 sought to prohibit.

**{24}** We disagree. The HOA points us to no evidence or authority that would lead us to conclude that short-term rentals, more so than long-term rentals, or even access to the Subdivision granted generally to guests of other property owners, constitute a nuisance or unreasonably interfere with the Subdivision's common property or neighboring properties. We therefore conclude that the HOA has no authority under a general grant of authority to promulgate rules to restrict rental activity in the Subdivision and that Rule 2.2 is an unreasonable restriction on Defendant's use of his lot. *See* Restatement § 6.7(2)(a), cmt. b ("Rules are not valid unless they are also reasonable."). If Defendant's short-term tenants engage in behavior that could legitimately be considered a nuisance, the HOA certainly has valid rules in place that would allow it to seek redress against Defendant or resort to traditional avenues such as law enforcement. *See Kiekel v. Four Colonies Homes Ass'n*, 162 P.3d 57, 63-64 (Kan. Ct. App. 2007) (denying claim for injunctive relief to enjoin the

9

defendant's rentals generally "in order to prevent specific instances of noxious activity" by tenants).

**{25}**     Thus, absent specific authorization in the declaration, the HOA had no authority to promulgate a rule restricting rental activity in the Subdivision.  The HOA points us to three provisions of the CCRs which it contends granted the HOA this specific authority.  Contrary to the HOA's assertions, these provisions do not specifically authorize the HOA to restrict individually owned property uses, and they do not even mention rentals.  We have already determined that the "residential purposes" language of Article VI, Section 21 does not prohibit short-term rentals.  Furthermore, the language in Article VI, Section 45[2] regarding "temporary use" grants no authority to the HOA to restrict rentals.  Rather, it requires a property owner to obtain permission from the architectural control committee for temporary uses of a lot and, considering the types of uses listed, implies that non-residential uses are the "temporary uses" needing approval.  Finally, the provision in Article IV, Section 4 allowing homeowners to delegate their rights to the common facilities is not a grant of authority to the HOA to restrict rentals on individually owned lots.  *See Kiekel,* 162 P.3d at 62 (holding that a provision authorizing a homeowner to delegate his or her rights to common areas to tenants did not authorize the homeowners' association to later adopt a bylaw provision restricting rentals).  Thus, we see nothing in the CCRs that granted the HOA specific authorization to restrict the rentals of individually owned lots or that put homeowners on notice that the HOA had such authority to impose this type of restriction in the future.

**{26}**     For these reasons, we agree with the district court that Rule 2.2 is invalid and cannot be enforced against Defendant.  If the HOA desired to prevent short-term rentals, this restriction should have been included in the originally filed CCRs, not in the HOA Rules adopted nearly three years later.  *See Wilson*, 123 P.3d at 1150 ("If the recorded declaration does not contain or at least provide for later adoption of a particular restriction or requirement, that restriction or requirement is invalid."); *Kiekel*, 162 P.3d at 62 (holding that without proper authorization in the declaration, a homeowner's association could not impose rental restrictions by amendment to its bylaws and must "do so through an amendment to the Declaration.").  *Cf.* New Mexico Condominium Act, NMSA 1978, §§ 47-7B-1 to -21 (1982, as amended through 2012) ("The declaration for a condominium shall contain[] . . . any restrictions on use, occupancy and alienation of the units."  Section 47-7B-5(A)(12)).

## II.     The Second Lawsuit

---

[2] Section 45 states, "**Temporary Uses.**  Any lot or portion thereof may be used by Declarant as a sales office, model home, storage area, or construction yard during the construction and sales period.  Any other temporary use by any party must have the prior written approval of the Architectural Control Committee."

## A. The CCRs Were Not Validly Amended

**{27}** We now turn to the subject of the HOA's second appeal and consider whether the HOA's purported amendment to the CCRs validly prohibited short-term rentals. We review this issue de novo. *See Heltman*, 2010-NMCA-016, ¶ 5; *Cain*, 100 N.M. at 185, 668 P.2d at 301.

**{28}** The district court determined that, absent unanimous agreement of the HOA members, the CCRs could not be amended before the expiration of the twenty-five-year period in the duration clause of the CCRs. Article VIII, Section 1 of the CCRs states:

> All of the provisions of this Declaration will run with and bind the land, Members, and Owners . . . for a term of twenty-five (25) years from the date on which this Declaration is recorded . . . after which date this Declaration shall be automatically extended for successive periods of ten (10) years each unless a Supplemental Declaration executed and acknowledged by the President and any other one (1) officer or member of the Board with the approval of the then-Owners of two-thirds . . . of the Lots has been recorded . . . amending, modifying, or terminating this Declaration, which Supplemental Declaration shall be effective upon such recordation following the proper execution and acknowledgment thereof.

The HOA argues that the plain language of the duration clause, along with other provisions of the CCRs, indicate that the CCRs could be amended at any time upon the affirmative vote of the two-thirds of the HOA members. We disagree.

**{29}** In *Heltman*, we stated,

> Where a provision [in a restrictive covenant] provides that a covenant shall remain in effect for an initial period, after which it may be modified by less than unanimous consent, courts have interpreted these provisions to simply provide an exception, after a certain number of years, to the general rule that unanimity is required in order to amend a restrictive covenant.

2010-NMCA-016, ¶ 7. Thus, under *Heltman*, if the covenants provide an initial duration period, such as the twenty-five-year term here, absent other language in the covenant to the contrary, amendments to the covenants during that initial period are void unless there is unanimous approval among the property owners. *See Johnson v. Howells*, 682 P.2d 504, 505 (Colo. App. 1984) (holding that restrictive covenants could not be amended before expiration of initial twenty-year period without unanimous agreement of property owners); *Kauffman v. Roling*, 851 S.W.2d 789, 793 (Mo. Ct. App. 1993) (same); *see also Post v. Murphy*, 873 P.2d 118, 121 (Idaho 1994) (construing similar restrictive covenant language and concluding that "[t]he Restrictions clearly state that only after January 1, 1995, may the Restrictions be amended by a two-thirds vote . . . until January 1, 1995, a unanimous vote

11

is required to amend them").

**{30}** Notwithstanding *Heltman*, the HOA urges us to consider additional language in the duration clause that the HOA argues evidences an intent to allow for amendments to the CCRs at any time upon an affirmative vote of two-thirds of the members. The HOA claims that the use of the term "has been" in the duration clause—"unless a Supplemental Declaration . . . has been recorded"—contemplates that a supplemental declaration could be recorded during the initial twenty-five years. Similarly, the HOA claims that the language that a supplemental declaration "shall be effective upon such recordation" means that once a supplemental declaration is recorded, it is enforceable, regardless of whether it was amended prior to the expiration of the initial twenty-five-year term.

**{31}** We are not persuaded that the interpretation urged by the HOA is correct. "Unless" and "has been" in the duration clause, which follow "after which date," clearly qualify the phrase providing that the CCRs will automatically extend at the conclusion of the initial twenty-five-year term. *Hale v. Basin Motor Co.*, 110 N.M. 314, 318, 795 P.2d 1006, 1010 (1990) ("Relative and qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to or including others more remote." (alteration, internal quotation marks, and citation omitted)). *Cf. Heltman*, 2010-NMCA-016, ¶ 10 (construing "unless" in successive period clause). To construe this language as permitting amendments at any time would render superfluous the language regarding the initial twenty-five-year term. *See Illini Fed. Sav. & Loan Ass'n v. Elsah Hills Corp.*, 445 N.E.2d 1193, 1196 (Ill. App. Ct. 1983) (construing similar duration provision and stating that "if the restrictions can be amended at any time, the [twenty]-year and successive [ten]-year time periods would be rendered meaningless"); *In re Wallace's Fourth Southmoor Addition to City of Enid*, 874 P.2d 818, 820 (Okla. Civ. App. 1994) ("If the owners had intended that the covenants could be amended at any time by sixty percent of the owners, they would not have needed to include any reference to a twenty-year period."); *Howells*, 682 P.2d at 505 ("The plain meaning of the paragraph in question is that the covenants will be binding for twenty years, *after which time* they are automatically extended *unless* sixty percent of the property owners agree to change them[.]").

**{32}** For these same reasons, the "effective upon such recordation" language in the duration clause does not evidence an intent to allow amendments during the initial time period. In *Heltman*, we considered whether an amendment to the covenants after expiration of the initial duration period, but during a successive ten-year period following automatic extension, was effective immediately or at the conclusion of the ten-year period. 2010-NMCA-016, ¶¶ 10-12. We held that the amendment was not effective until the start of the next successive ten-year period because it was not passed by a unanimous vote. *Id.* ¶ 12. Here, the language relied upon by the HOA is located in the section of the duration clause regarding amendments to the CCRs *after* the initial twenty-five-year time period has expired. If anything, this provision actually seems intended to prevent the result found in cases such as *Heltman* wherein the amendments do not become enforceable until an automatically triggered extension period has expired. *See, e.g.*, *Scholten v. Blackhawk Partners*, 909 P.2d

12

393, 396 (Ariz. Ct. App. 1995); *In re Wallace's Fourth Southmoor Addition to the City of Enid*, 874 P.2d at 820.

{33} The cases cited by the HOA in support of its position, however, do highlight the language in a restrictive covenant that can be used to allow amendments to become immediately enforceable despite the presence of an initial duration period. In *Reinecke v. Kleinheider*, the restrictive covenant contained an initial fifteen-year period but also allowed for amendments "at any time." 804 S.W.2d 838, 841 (Mo. Ct. App. 1991). The *Reinecke* court did not provide a quotation of the relevant portions of the duration clause such that we could undertake an adequate comparison, but the court clearly found the "at any time" language, which is not in the CCRs before us, determinative to its outcome. *Id.* Similarly, in *Good v. Bear Canyon Ranch Ass'n*, the duration clause stated, "This [d]eclaration *and any amendments or supplements to it* shall remain in effect from the date of recordation for a period of fifty . . . years." 160 P.3d 251, 254 (Colo. App. 2007) (internal quotation marks and citation omitted). The *Good* court concluded that "[t]he inclusion of the terms 'amendments' and 'supplements' contemplates that amendments may be made to the covenants during the initial fifty-year period." *Id.* That is not the case here where the duration clause states that only the original CCRs, and not amendments or supplements, are enforceable for the twenty-five-year period. Finally, in *Brockway v. Harkleroad*, the declaration provided, "These covenants and restrictions may be amended during the first twenty . . . years . . . by an instrument signed by not less than seventy-five percent . . . of the Lot Owners." 615 S.E.2d 182, 184 (Ga. Ct. App. 2005). However, there is no analogous provision in the CCRs currently before us expressly authorizing amendments during the initial duration period.

{34} Finally, we also reject the HOA's argument that other provisions of the CCRs evidence an intent to allow amendments at any time. The HOA relies on Article VIII, Section 2(a), to argue that since the CCRs have already been amended to transfer Class B membership to Class A membership, then it is illogical to say that the CCRs cannot be amended before expiration of the twenty-five-year period. As we have noted, there are two avenues to an effective amendment during the initial duration period. One would be by unanimous approval of all of the members. The second would be express authorization in the CCRs allowing for such an amendment. *See Reinecke, Good, Brockway.* Section 2(a) expressly authorizes the "declarant," which is the developer of the Subdivision, to unilaterally amend, modify, or terminate the CCRs until either ninety percent of the lots are sold or, at the latest, December 31, 2015. Therefore, Subsection 2(a) permitted a specific amendment by the developer to transfer membership rights to homeowners, but the CCRs did not authorize the HOA to amend the CCRs to restrict the homeowners' uses of their property.

{35} The HOA also points to Section 2(b), which sets out procedures for amending the CCRs and specifically restates the two-thirds voting requirement for amendments but does not restate the twenty-five-year duration period. Construing Section 2(b) as allowing amendments at any time upon a two-thirds vote because it fails to restate the duration period,

however, would effectively abrogate the duration clause and render the twenty-five-year duration period meaningless. *See Cain*, 100 N.M. at 186, 668 P.2d at 302 (stating that "restrictive covenants must be considered reasonably, though strictly, so that illogical, unnatural or strained construction will not be effected" (internal quotation marks and citation omitted)).

{36} Therefore, considered as a whole, the plain meaning of the duration clause evidences an intent to allow a supplemental declaration to supplant an automatic extension of the CCRs at any time after the expiration of the twenty-five-year period, not during the twenty-five-year period itself. In other words, once the twenty-five-year time period has expired, the CCRs automatically extend *unless* a supplemental declaration *has been* recorded. Once recorded, the supplemental declaration becomes effective regardless of whether an automatic extension has been triggered and not completely run its ten-year course. For these reasons, we agree with the district court that the Supplemental Declaration recorded by the HOA is void and unenforceable. Because we conclude that unanimous approval of HOA members was required to amend the CCRs during the initial twenty-five-year period, we do not consider the issues argued by the parties regarding the validity of the votes cast at the December annual meeting.

**B.     The District Court Did Not Abuse Its Discretion in Declining to Consider Alleged Violations Under the Original CCRs**

{37} Having concluded that the Supplemental CCRs are unenforceable, we are faced with a purported amendment issue similar to the one addressed earlier in this opinion. The HOA's complaint in the second lawsuit only alleged violations of the Supplemental CCRs. Furthermore, Defendant specifically objected to the trial of any claims based on the original CCRs because such violations were not pleaded in the complaint. The district court agreed and considered only claims based on the Supplemental CCRs, and it ruled that the Supplemental CCRs were unenforceable. The HOA now argues on appeal that when the district court set aside the Supplemental CCRs, it left the original CCRs still in effect. The HOA therefore claims that we should now consider whether Defendant violated the original CCRs, despite its allegations and arguments below that it was the Supplemental CCRs that were violated.

{38} The HOA is correct in asserting that the original CCRs are still in effect. However, in the second lawsuit, the HOA neither alleged violations of the original CCRs as an alternative count in its complaint nor did it attempt to refute Defendant's argument that the district court should not consider alleged violations under the original CCRs. The first time the HOA attempted to persuade the district court to consider alleged violations of the original CCRs was in its untimely motion to reconsider and amend the judgment. Therefore, the district court did not abuse its discretion in denying the HOA's attempt to amend its complaint.

**C.     The HOA Waived Its Arguments Regarding Defendant's Alleged Violations of**

**HOA Rules**

**{39}**     Finally, the HOA argues that the district court erred in failing to rule upon the HOA's allegations in the complaint and the motion for preliminary and permanent injunction that Defendant violated HOA Rule 8.5.  The district court made no explicit findings of fact or conclusions of law on these allegations, and the district court's order stated only that the HOA's "request for preliminary and permanent injunctions is denied" without clarification as to whether this applied to Defendant's alleged violations of HOA Rules.

**{40}**     We conclude, however, that the HOA waived the arguments regarding an alleged violation of HOA Rule 8.5 by failing to introduce evidence supporting its allegations and by failing to file a timely motion to reconsider and amend the judgment to include these issues. At the hearing, HOA's counsel asked an HOA witness whether the HOA requires homeowners to provide certain information to the HOA under Rule 8.5.  The witness replied in the affirmative.  HOA's counsel did not, however, elicit any further testimony from the HOA representative or from any other witness as to whether Defendant actually provided this information.  The HOA points us to the requests for admission attached to Plaintiff's Exhibit 30, but the requests for admission were never admitted as evidence at the hearing. Rather, the HOA introduced only Defendant's answers to interrogatories, which do not state whether Defendant did or did not comply with the HOA Rules. *See Ulibarri v. Homestake Mining Co.*, 112 N.M. 389, 395, 815 P.2d 1179, 1185 (Ct. App. 1991) (stating that "[t]he party alleging the affirmative of an issue has the burden of proving that issue").  Finally, while the HOA did file a motion to reconsider and amend the judgment arguing that the district court failed to rule on whether Defendant violated HOA Rule 8.5, this motion was filed nineteen days after the district court entered its order and was therefore untimely. *See* Rule 1-052(D) NMRA (requiring a motion to amend to be filed within ten days of judgment); Rule 1-059(E) NMRA (same).  For these reasons, we conclude that the district court did not err in not ruling on matters pleaded, but not tried, by the HOA when the HOA failed to provide a factual basis for the district court to rule in its favor.

**CONCLUSION**

**{41}**     For the foregoing reasons we affirm the district court's denial of the HOA's requests for injunctive relief in both cases.

**{42}     IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

15

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Estates at Desert Ridge Trails v. Vazquez*, Nos. 30,944/31,590**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Injunctions
Reconsideration
Waiver

**CONTRACTS**
Ambiguous Contracts

**GOVERNMENT**
Municipalities
Ordinances
Zoning Law

**PROPERTY**
Home Owners Association
Restrictive Covenants
Leases and Leaseholds

**REMEDIES**
Injunctions